REVISED, November 6, 1998

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 97-20954

Summary Calendar

_____

JASON D W, BY NEXT FRIEND
MR & MRS DOUGLAS W

                                        Plaintiff-Appellant,

v.

HOUSTON INDEPENDENT SCHOOL DISTRICT,

                                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Texas
_____

September 21, 1998

Before KING, HIGGINBOTHAM, and DAVIS, Circuit Judges.

PER CURIAM:

     Jason W., by his next friends and parents Mr. and Mrs.
Douglas W., appeals the district court's order awarding him
reduced attorneys' fees and granting costs to the Houston
Independent School District.  We affirm.

                 I.  FACTUAL AND PROCEDURAL BACKGROUND

     Plaintiff-appellant Jason W. (represented in this action by
his next friends and parents, to whom we refer collectively as
Jason) is a special education student in the Houston Independent
School District (the District).  He has been diagnosed with

attention deficit disorder and a speech impairment that cause him significant academic and social difficulty.  Since early 1994, Jason has qualified for special education services, and the District has created individualized education plans for him.  These entail, inter alia, providing resource instruction and consultation, modifying the regular education program to meet Jason's needs, and developing behavior management plans designed to control his disruptive behavior.  During the 1994-95 school year, Jason's parents became dissatisfied with Jason's special education program and requested a hearing under the Individuals with Disabilities in Education Act (IDEA), 20 U.S.C. §§ 1400-1491, which conditions federal aid to state special education programs on a state's assurance to all children with disabilities "an opportunity to present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate education to such child."  20 U.S.C. § 1415(b)(1)(E).[1]  Jason rejected the District's official settlement offer, and a hearing was held on May 25 and June 12-16, 1995 before James Holtz, an attorney appointed as a hearing officer by the state of Texas.  On July 22, 1995, Holtz filed a written decision finding that (1) Jason's parents were entitled to reimbursement for the fees of two psychologists whom they had retained to help the District develop a behavior management plan for Jason, (2) that the

_____

[1]  This opinion cites to the version of the IDEA in effect at the time of the events in this case.  The IDEA was completely revised in 1997 by Pub. L. No. 105-17, 111 Stat. 37.

behavior management plan ultimately adopted by the District was not appropriate, and (3) that Jason's placement in a resource class from January 10, 1995 to February 2, 1995 was not appropriate and denied him a free appropriate public education (FAPE).

On July 26, 1995, Daniel McCall, Jason's attorney, wrote to Jennifer Jacobs, the District's attorney, demanding $32,943.97, a sum representing the total amount of attorneys' fees and costs. After McCall rejected two settlement offers of $7500.00 and $10,000.00, Jason filed an action in the federal district court for the Southern District of Texas, Houston Division, seeking recovery of all attorneys' fees and costs incurred in the special education hearing and in federal court under the IDEA, 20 U.S.C. § 1415(e)(4)(B). On April 26, 1996, the District made an official offer of judgment under Federal Rule of Procedure Rule 68 in the amount of $24,429.00, which Jason failed to accept. After a bench trial, the district court found that nineteen specific issues had been presented to the hearing officer and that Jason had prevailed on only three. The court also found that the hearing afforded Jason some specific relief that he would not have received had he accepted the District's settlement offer. The court ruled that Jason was a prevailing party, but awarded him only a fraction of the attorneys' fees he demanded. Because it found that at least half of the time and effort expended in the hearing had been devoted to three issues relating to a new school placement for Jason--issues on which Jason did

3

not prevail--the district court first reduced the hours his attorney claimed to have spent by half. Of the remaining sixteen issues, the court found that Jason prevailed on only three and that even success on these three afforded Jason little relief beyond what the District had offered prior to the hearing. Based on these factors, the court again reduced the number of hours by half. In addition, the district court ruled, based on its finding that Jason was entitled only to total fees, costs, and expenses in the amount of $8340.49 on the date of the District's $10,000.00 settlement offer, that Jason had unreasonably protracted the controversy by refusing to settle. It declined to award Jason any fees or costs beyond $8340.49. Jason thus did not receive fees or costs for the federal lawsuit.

The District filed a motion to amend final judgment, contending that under Federal Rule of Civil Procedure 68, it was entitled to its costs after April 26, 1996. The District argued that because it had made an offer of judgment on April 26, 1996 in the amount of $24,429.00, which was more than the $8340.49 that Jason ultimately obtained at trial, it was entitled to all costs after that date. The district court granted the motion and awarded the District $2322.05. Jason filed a motion for new trial, which the district court denied. Jason appeals.

## II. DISCUSSION

Jason argues that the district court erred in awarding attorneys' fees in a reduced amount and in granting costs to the District. We address each of these issues in turn.

4

*A. Standard of Review*

We review an award of attorneys' fees for abuse of discretion and the factual findings upon which the award is based for clear error. See Brady v. Fort Bend County, 145 F.3d 691, 716 (5th Cir. 1998); Migis v. Pearle Vision, Inc., 135 F.3d 1041, 1047 (5th Cir. 1998) (citing Louisiana Power & Light Co. v. Kellstrom, 50 F.3d 319, 324, 329 (5th Cir. 1995)). Although we generally review a district court's award of costs for abuse of discretion, see Alberti v. Klevenhagen, 46 F.3d 1347, 1358 (5th Cir. 1995), interpretation of Rule 68 is an issue of law that we review de novo, see Louisiana Power & Light Co., 50 F.3d at 333.

*B. Attorneys' Fees*

In any action or proceeding brought under the IDEA, the court "may award reasonable attorneys' fees as part of the costs to the parents or guardian of a child or youth with a disability who is the prevailing party." 20 U.S.C. § 1415(e)(4)(B). The legislative history of the IDEA indicates that this attorneys' fees provision should be interpreted in accordance with Hensley v. Eckerhart, 461 U.S. 424 (1983), a federal civil rights decision.[2] See H.R. REP. No. 105-95, at 105-06. Therefore, we apply the principles outlined in Hensley and its progeny to this

_____

[2] Technically, this statement refers to the attorneys' fees provision in the post-1997 version of the IDEA, but Congress reenacted the identical language of 20 U.S.C. § 1415(e)(4)(B) as 20 U.S.C. § 1415(i)(3)(B) when it revised the IDEA in 1997. Because the amendment did not change the language of the attorneys' fees provision, we believe that Congress also intended 20 U.S.C. § 1415(e)(4)(B) to be interpreted consistent with Hensley v. Eckerhart.

case.

The calculation of attorneys' fees involves a well-established process.  First, the court calculates a "lodestar" fee by multiplying the reasonable number of hours expended on the case by the reasonable hourly rates for the participating lawyers.  See Louisiana Power & Light Co., 50 F.3d at 324.  The court then considers whether the lodestar figure should be adjusted; in making such an adjustment, the court looks to the twelve factors established in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974): (1) the time and labor required for the litigation; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  See Louisiana Power & Light Co., 50 F.3d at 329.  Many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate, see Hensley, 461 U.S. at 434 n.9, and should not be double-counted, see Shipes v. Trinity Indus., 987 F.2d 311, 320 (5th Cir. 1993).  Moreover, some Johnson factors deserve more weight

6

than others.  The Supreme Court held that "the most critical factor" in determining the reasonableness of a fee award "is the degree of success obtained."  Farrar v. Hobby, 506 U.S. 103, 114 (1992) (quoting Hensley, 461 U.S. at 436); see also Von Clark v. Butler, 916 F.2d 255, 258 (5th Cir. 1990).  This factor is particularly crucial when, as in this case, a plaintiff is deemed "prevailing" even though he succeeded on only some of his claims.  See Hensley, 436 U.S. at 434.

Both parties agree that Jason is a prevailing party. Hensley noted that a "typical" definition of "prevailing party" for attorneys' fees purposes is a party who "succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit."  461 U.S. at 433 (quoting Nadeau v. Helgemoe, 581 F.2d 275, 278-79 (1st Cir. 1978)).  This circuit has specifically held that in IDEA cases, a prevailing party is one that attains a remedy that both (1) alters the legal relationship between the school district and the handicapped child and (2) fosters the purposes of the IDEA.  See Angela L. v. Pasadena Indep. Sch. Dist., 918 F.2d 1188, 1193-94 (5th Cir. 1990).[3]  The hearing altered the legal relationship between Jason and the District, which was ordered to reimburse his parents for the fees of both psychologists, adjust his

_____

[3]  This circuit adopted a narrower definition of "prevailing party" in the context of § 1988 attorneys' fees cases, holding that prevailing parties must succeed on the central issue of their suit and obtain the primary relief sought, see Texas State Teachers Ass'n v. Garland Indep. Sch. Dist., 837 F.2d 190, 192 (5th Cir. 1988), but we need not consider that definition because the Angela L. standard explicitly applies to IDEA cases.

behavior modification plan to include positive reinforcement, and train his teachers to implement the behavior modification plan properly. Furthermore, the remedy that Jason obtained fosters the purposes of the IDEA by providing him with a free and appropriate public education.

A finding that a party is a prevailing party only makes him eligible to receive attorneys' fees under the IDEA; it does not automatically entitle him to recover the full amount that he spent on legal representation. See 20 U.S.C. § 1415(e)(4)(B) ("In any action or proceeding brought under this subsection, the court, in its discretion, may award reasonable attorneys' fees . . . .") (emphasis added). Jason contends that all the Johnson factors support his application for the full amount of attorneys' fees. The district court, however, reduced the fees based only on its finding that the action did not involve novel or difficult questions of fact or law and that Jason achieved limited success at the hearing. Because we find that the district court did not abuse its discretion in reducing the attorneys' fees from $32,943.97 to $8340.49 on the grounds of these two factors, we find it unnecessary to examine the others.

First, Jason offers only bald assertions in support of his contention that his case involved novel and difficult questions. He states that the District is the largest public school district in the state of Texas, that the hearing was requested by the parents to contest all of the District's decisions concerning Jason's education, and that five special education experts

8

testified at the hearing. The size of the District or the hearing does not show that the suit involved novel or difficult legal and factual issues, however, and Jason's claim that the parents filed an appeal of all of the District's decisions on Jason's education is simply inaccurate, as Holtz testified at trial that he explicitly limited the issues to those arising out of the 1994-95 school year. We cannot say that the district court committed clear error in finding that Jason's case did not involve novel and difficult issues.

Second, attorneys' fees must reflect the degree of success obtained. The District contends that the parties presented nineteen issues to Holtz, of which Jason prevailed on three; therefore, it contends that Jason achieved only limited success at the hearing, and his attorneys' fees should be reduced accordingly. Jason asserts that (1) the nineteen issues the district court identified were not all presented at the hearing; (2) the question of whether Jason was receiving a FAPE, on which Jason prevailed, was the primary and subsuming issue at the hearing; and (3) the issues in this suit were so interrelated that it is impossible to allocate time among the individual issues.

We find that the district court did not commit clear error in determining that there were nineteen issues, of which Jason prevailed only on three, and did not abuse its discretion in awarding attorneys' fees accordingly. There is ample evidence in the record to support the district court's findings that Jason

9

achieved limited success. James Holtz, the hearing officer at Jason's due process hearing, testified that nineteen issues were presented to him in Jason's case and that Jason did not prevail on all those issues. Holtz's testimony confirmed that of Nona Matthews, the District's expert witness, who analyzed transcripts of the hearing and concluded that nineteen issues were presented.

Moreover, both Holtz and Matthews testified at trial that Jason's primary objective was to secure placement at another school. Holtz also testified, and the district court found, that more than half of the time and testimony at the hearing involved the issue of whether Jason would be placed in another school. Holtz further testified that although another major issue was whether the District had provided Jason with a free appropriate public education during the 1994-95 school year, this issue did not subsume all others, and Jason was not entirely successful on his claim that he had been denied a FAPE:

    Holtz:    The major issue--

    McCall:   Yes.

    Holtz:    --before me involved I guess the alternate
              determination, whether or not there was a Free
              Appropriate Public Education being provided to the
              student during that school year. But this did not
              include all of the issues that were raised by the
              parties.

    McCall:   And did the petitioner prevail on the major issue
              of whether there was denial of F.A.P.E.?

    Holtz:    Partially.[4]

_____

[4]  Jason argues that the district court erred in striking several post-trial exhibits, one of which was an affidavit from James Holtz in support of Jason's application for attorneys'

Furthermore, the language of the IDEA itself demonstrates that not all of the nineteen issues that Holtz identified can be subsumed under the general heading of denial of a FAPE. The IDEA guarantees "an opportunity to present complaints with respect to any matter relating to the identification, evaluation, <u>or</u> educational placement of the child, <u>or</u> the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(1)(E) (emphasis added). The IDEA thus treats placement and denial of a FAPE as separate issues; moreover, it implies that identification and evaluation of the child also should be considered distinct issues. Even assuming that the remaining issues do fall under the FAPE umbrella, it is undisputed that Jason prevailed only on three of those issues; thus, as Holtz testified, he was only partially successful on the issue of whether he was denied a FAPE.

Jason also contends that the nature of a special education case is such that the issues are so interrelated that it is impossible to determine how much time was spent on each issue.

fees. Although Jason includes this question in his statement of the issues, he provides no argument or authority in support of his position. We have held that failure to provide any legal or factual analysis of an issue on appeal waives that issue. <u>See Cavallini v. State Farm Mut. Auto Ins. Co.</u>, 44 F.3d 256, 260 n.9 (5th Cir. 1995); <u>see also</u> Fed. R. App. P. 28(a)(6)("The argument must contain the contentions of the appellant on the issues presented, and the reasons therefor, with citations to the authorities, statutes, and parts of the record relied on."); <u>Gann v. Fruehauf Corp.</u>, 52 F.3d 1320, 1328 (5th Cir. 1995) (holding that appellant waived claims on appeal by failing to advance arguments in support of them in the body of his brief). The district court struck these exhibits, Jason provides no argument as to why we should find that it erred in doing so, and we therefore decline to address them.

This argument lacks merit; indeed, we have rejected a similar claim in an analogous case. See Migis v. Pearle Vision, Inc., 135 F.3d 1041, 1048 (5th Cir. 1998). In Migis, the plaintiff alleged four acts of discrimination on the basis of sex or pregnancy. She prevailed only on one, and only on the basis of pregnancy discrimination. See id. The district court reduced the amount of attorneys' fees. See id. at 1047. On appeal, Migis argued that her case could not be segregated into discrete claims because all of her contentions involved a common core of facts and because she only prosecuted a single, discrete claim of pregnancy discrimination. See id. at 1048. We rejected this argument, holding that even where "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." Id. (quoting Hensley, 461 U.S. at 436).

The district court did not commit clear error in finding that Jason prevailed on only three of nineteen issues before the hearing officer and that he lost on an issue on which the parties spent more than half of the time at the hearing. The district court did not abuse its discretion in reducing the requested fees by half to account for the time spent on pursuing the unsuccessful placement claim and by half again to reflect Jason's limited success on the other issues.

Jason also contends that the district court erred in cutting

12

off fees for Jason's attorney on the grounds that he unreasonably protracted litigation.  Under the IDEA, whenever a court finds that a fee applicant seeking attorneys' fees under the statute has "unreasonably protracted the final resolution of the controversy," the court "shall reduce, accordingly, the amount of attorneys' fees awarded."  20 U.S.C. § 1415(e)(4)(F)(i).  Jason argues that the protraction provision applies only to the actions taken by a party during the underlying hearing.  Alternatively, he contends that failing to accept a settlement offer during the fee collection process does not constitute protraction.  We disagree.

Jason cites no authority, and we can find none, for the proposition that the IDEA's protraction provision applies only to the underlying action and not to the attorneys' fees suit.  The statute refers generally to "the action or proceeding," language that covers both the administrative hearing proceeding <u>and</u> related action for attorneys' fees.  Moreover, the protraction provision applies to any action that hinders the "final resolution of the controversy."  In this case, the controversy between Jason and the District will not be finally resolved until the matter of attorneys' fees is settled.  Thus, it seems clear to us that § 1415(e)(4)(F)(i) is not limited to the underlying proceedings.

This court and a number of other federal courts have held that failing to settle can constitute protraction under § 1415(e)(4)(F).  <u>See</u> <u>Shelly C. v. Venus Indep. Sch. Dist.</u>, 878

13

F.2d 862, 863 (5th Cir. 1989) (reversing grant of summary judgment for plaintiff in attorneys' fee action under the IDEA in part because district court failed to consider whether plaintiff's attorney unnecessarily protracted proceedings where parties ultimately settled); see also Fischer v. Rochester Comm. Schs., 780 F. Supp. 1142, 1150 (E.D. Mich. 1991) (holding that failure to accept settlement can constitute protraction); Howey v. Tippecanoe Sch. Corp., 734 F. Supp. 1485, 1492-93 (N.D. Ind. 1990) (finding that plaintiff's counsel engaged in "a pattern of deliberate conduct to extend these proceedings" in a case under the Education of the Handicapped Act, the predecessor to the IDEA, by, inter alia, failing to accept a highly favorable settlement). Although Jason asserts in his brief that the settlement offer of $10,000.00 was not a firm offer and thus could not trigger § 1415(e)(4)(F)(i), he neither briefs the issue nor presents any evidence to support his contention. We therefore consider the issue waived. See Fed. R. App. P. 28(a)(6); Gann, 52 F.3d at 1328; Cavallini, 44 F.3d at 260 n.9.

*C.   Costs*

Jason contends that the district court erred in awarding costs to the District under Federal of Civil Procedure 68 because that Rule does not apply to cases brought under the IDEA. Awarding costs to the District, Jason argues, would contravene the IDEA's purpose of protecting the rights of the parent and the disabled child. We disagree. The policy behind Rule 68 is to "encourage settlement and avoid litigation." See Marek v.

14

<u>Chesny</u>, 473 U.S. 1, 5 (1985).  We see no conflict between this goal and that of protecting the welfare of children with disabilities and their parents.  <u>Cf.</u> <u>id.</u> at 11 ("Section 1988 encourages plaintiffs to bring meritorious civil rights suits; Rule 68 simply encourages settlements.  There is nothing incompatible in these two objectives.").  Indeed, the IDEA encourages settlement in, for example, § 1415(e)(4)(F)(i), which requires the court to reduce attorneys' fees for a parent or guardian who unreasonably protracts the final resolution of the controversy.  Moreover, we have explicitly approved awards of costs to a school district under the IDEA.  <u>See</u> <u>Cypress-Fairbanks Indep. Sch. Dist. v. Michael F.</u>, 118 F.3d 245, 256-57 (5th Cir. 1997) (affirming an award of costs to a school district in an IDEA case despite the parents' argument that doing so would have a chilling effect on the willingness of parents to contest school decisions vitally affecting their children), <u>cert. denied</u>, 118 S. Ct. 690 (1998); <u>cf.</u> <u>Bonnie Ann F. v. Calallen Indep. Sch. Dist.</u>, 835 F. Supp. 340, 351-52 (S.D. Tex. 1993) (granting costs to school district as a sanction under Federal Rules of Civil Procedure 11 and 16(f)), <u>aff'd</u>, 40 F.3d 386 (5th Cir. 1994).

Finally, Jason challenges the amount of the district court's award of costs.  Specifically, he asserts that the court should not have granted copying costs for 19,638 copies because that copying was not a necessity but a convenience for the District's attorneys.  He also claims that the court should not have granted fees for the testimony of Nona Matthews, who he contends was

15

neither an expert in the area of special education law, as the District represented, nor was reasonably necessary for the adjudication of the legal issues before the court. According to Southern District of Texas Local Rule 4(B), objections to a bill of costs must be filed within five days after the filing of the bill itself. See S. Dist. Tex. Local R. 4(B). The District filed a bill of costs and a brief in support of the bill of costs on December 5, 1996. The next day, the District filed a supplemental bill of costs. All three filings contained requests for Matthews's witness fees and the District's copying costs. Jason did not respond until January 13, 1997, well after the five-day time limit for filing an objection. We therefore find that the district court properly awarded these costs to the District.

*D. Other Issues*

Jason raises three other issues in his brief, but does not discuss them at all: (1) that his parents were entitled to reimbursement for child care expenses incurred while they attended the hearing before James Holtz, (2) that the district court erred when it found that the District "made an official offer of settlement" to Jason on May 12, 1995, and (3) that the district court abused its discretion in not awarding prejudgment interest on the outstanding attorneys' fees from the time of the entry of Holtz's decision. Jason does not present arguments or authority to support his position on these issues, however, and we therefore consider them waived. See Fed. R. App. P. 28(a)(6);

16

Gann, 52 F.3d at 1328; Cavallini, 44 F.3d at 260 n.9.

### III.   CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.