**Bartlett School Dist. V. Lindsay R.    CV-98-88        07/29/99**

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW HAMPSHIRE

Bartlett School District, et al.,
    Plaintiff

    v.                              Civil No. 98-88-B

Lindsay R., et al.,
    Defendants


### O R D E R

The parties are before me on the Defendants' motion for attorneys' fees and costs pursuant to 20 U.S.C. § 1415 (i)(3)(B)(West Supp. 1998).  Plaintiff objects, arguing that the amount Defendants seek is unreasonable.  For the reasons set forth below, I grant Defendants' motion in part and deny it in part, and award Defendants fees and costs totaling $29,872.75.

### FACTS

The underlying dispute in this case involved the education of Lindsay R., who suffered a permanent brain injury at birth and is now 21 years old.  Lindsay and her parents are the Defendants in this action.  Lindsay has difficulty integrating information, she has short-term memory problems, and she can become confused in unfamiliar situations. Lindsay's disability entitled her to

receive special education through her local public school system. See 20 U.S.C. §§ 1400-1485, the Individuals with Disabilities Education Act ("IDEA")(West 1990 & Supp. 1998). Lindsay attended public school in the Bartlett (New Hampshire) School District from first through eighth grade. Although the District provided her with a full-time aide during those years, Lindsay had difficulty with social interaction. Her mother, testifying before a Department of Education hearing officer, stated that Lindsay had no friends and students would often play tricks on her. In the ninth grade, Lindsay transferred to Riverview, a private residential school in Massachusetts with programs designed to address both Lindsay's academic and social needs. As required by law, the District paid for Lindsay's education at Riverview.

Lindsay participated in graduation exercises at Riverview in June 1997, receiving a "certificate of completion" rather than a diploma. Around the same time, the District informed Lindsay and her parents that it intended to terminate her from special education. In a letter to Superintendent of Schools Harry Benson dated June 26, 1997, Lindsay's parents objected and sought a due process hearing. Among other things, Lindsay's parents requested

that the District provide special education services until she reached the age of 21.

Lindsay and her parents subsequently retained counsel, who filed an amended due process hearing request on their behalf on July 31, 1997. The family no longer sought services until the age of 21, but instead requested relief in the form of placement at Riverview's "G.R.O.W." program, a 10-month residential program designed to transition students like Lindsay from school to the adult world. At the same time, counsel for the family submitted a motion to enforce the "stay put" requirements of the IDEA by ordering Lindsay's placement in G.R.O.W..[1] They also sought to enjoin Riverview from issuing Lindsay's diploma pending a decision.

The G.R.O.W. program required a deposit by August 8, 1997, in order to hold Lindsay's place. The family, therefore, requested that the Department of Education rule on their stay put motion no later than that date. Hearing Officer S. David Siff denied the "stay put" motion in an order dated August 7, stating

_____

[1] The IDEA provides that "during the pendency of any proceeding conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of such child . . .." 20 U.S.C. § 1415(j). New Hampshire's applicable regulation essentially mirrors the IDEA language. See N.H. Code Admin. R. Ed 1128.14 (eff. 10/30/96).

that the parents "failed to reasonably prove that the Riverview G.R.O.W. Program would be the 'current education placement' as contemplated by the New Hampshire Standards after this Student's graduation and award of a diploma from Riverview High School." In re: Lindsay R./Bartlett School District, IDPH #97-36, Order at 4 (August 7, 1997)(hereinafter "Stay Put Order").

Hearing Officer Siff presided over a four-day due process hearing later that month, continuing into September. Lindsay's post-hearing memorandum noted that the G.R.O.W. program was not a viable option, as the school would no longer hold a place for her. The memorandum stated that:

> the parents and student no longer request placement at the Riverview School's GROW program. Instead, they request that the hearing officer order that Lindsay is entitled to one year of education to make up for the school district's failure to provide appropriate transition planning for her. The purpose of the compensatory education would be to provide for the development of an appropriate transition plan, and for services pursuant to that plan, including a situational assessment(s) in the child care and/or teaching field, the development of labels and scripts, and provision of qualified personnel to carry it out.

Aff. of Sheila Zakre (Counsel for Defendants), attachment 6.[2] In

---

[2] Although the portion of the memorandum quoted above and provided by Defendants' counsel to the Court is undated, it is reasonable to assume that it was written and submitted prior to the Hearing Officer's October decision, as his decision references and quotes the memorandum.

the meantime, the District had agreed to provide interim services for Lindsay.  She received 10 hours of "mentoring" each week beginning in September.

In an order dated October 16, 1997, Hearing Officer Siff directed the District to convene a team to address Lindsay's transitional needs.  He found that Lindsay was not entitled to "`compensatory education' in the traditional sense of the phrase," but that she was entitled to appropriate transition services.[3]  He further found that:

> The Parents are not found to be the "prevailing party" for the most part because of the unreasonable first demand that Student should be continued in schooling, at District expense, in the G.R.O.W. Program, in Massachusetts.  To the extent that the Parents' demand was for appropriate transition services, they are the "prevailing party."

---

[3] In some circumstances, a student may be entitled to compensatory education to make up for violations of the IDEA. See, e.g., Murphy v. Timberlane Regional School Dist., 22 F.3d 1186, 1187 (1st Cir. 1994)(affirming district court judgment granting student two years of compensatory education); Pihl v. Massachusetts Dept. of Educ., 9 F.3d 184, 188-89 (1st Cir. 1993). This is so even where the student is beyond the eligible age for free education under state law. See Murphy, 22 F.3d at 1187 (student was 25 years old); Pihl, 9 F.3d at 189-90 (student was 27 years old).  Transition services, by contrast, are designed to promote "movement from school to post-school activities."  20 U.S.C. § 1401(30)(A).  Such services may include "instruction, related services, community experiences, the development of employment and other post-school adult living objectives, and, when appropriate, acquisition of daily living skills and functional vocational evaluation."  20 U.S.C. § 1401(30)(C).

In re: Lindsay R./Bartlett School District, IDPH #97-36, Order at 17-18 (October 16, 1997)(hereinafter "Due Process Order").

The District convened a meeting on November 13, 1997. Defendants claim that the District did not offer Lindsay any services at that meeting. The meeting minutes state that "It is the schools [sic] district's position that it has met its obligations and continuing intents of the hearing officer's findings." Defs.' Response to Pl.'s Objection to Motion for Attorney's Fees and Costs, attachment 10. The District apparently believed that the interim services it provided Lindsay pending the outcome of the due process request satisfied the hearing officer's order. The District discontinued Lindsay's 10 hours of mentoring services per week at or around the same time.

Defendants filed a motion to enforce the Due Process Order on November 20, 1997, alleging that the District refused to offer Lindsay any services at the November 13 meeting. The District did offer "referral to Vocational Rehabilitation with participation of Center of Hope." Lindsay had applied to receive services through the Division of Vocational Rehabilitation. At that point, however, the Center of Hope, the local agency administering such services, maintained a waiting list of six months to one year. Thus, Lindsay was not expected to receive

services for some time.[4]  Defendants requested a hearing to determine whether the District had, in fact, met its obligations under the Due Process Order.  In a letter dated the same day, November 20, counsel for the District offered Defendants 13 weeks of transitional services for Lindsay for 10 hours per week.  Defendants apparently rejected this offer.

In response to a request from the Hearing Officer, Defendants submitted a proposed order on their motion on January 20, 1998.  The proposed order read as follows:

> The Bartlett School District is hereby ordered to provide Lindsay . . . with compensatory education to effectuate her smooth transition from special education to the Division of Vocational Rehabilitation, until May 31, 1999.

Zakre Aff., attachment 10.

On February 19, the District filed an action in this Court, seeking to overturn the hearing officer's Due Process Order.  See Bartlett School District v. Lindsay R., CV-98-92-B. Defendants offered to settle the entire matter in a letter dated February 20, 1998.  Defendants proposed five hours of mentoring services weekly until the end of the semester (12 weeks), and five hours

_____

[4]  In fact, Lindsay did not begin receiving services until the summer of 1998.  Her funding was authorized as of July 1, 1998, and services were scheduled to begin six to eight weeks later.  See Defs.' Response at 10, and attachment 8.

per week during the following fall and spring semesters.  If the District agreed to those terms, Defendants also offered to waive any attorneys' fees associated with enforcing the Due Process Order.[5]  The District rejected the offer, stating "The Bartlett School District believes that it has filled its legal obligations and is not interested in settlement on the terms you proposed.  Additionally, the Bartlett School District is making no counteroffer for settlement at this time."  Defs.' Response, attachment 6.

Hearing Officer Siff presided over a one-day hearing on the motion to enforce in March 1998.  He subsequently ordered the District to provide Lindsay with 10 hours of services per week through the end of the semester, continuing through the summer if she continued her education, and continuing through the fall semester if services at the Center of Hope had not yet begun.  See In re: Lindsay R./Bartlett School District, IDPH #97-36, Order at 2-3 (March 27, 1998)(hereinafter "Order on Motion to Enforce").  He admonished both sides for failing to come to an agreement earlier, noting that Lindsay had suffered a break in services as a result:

---

[5]  As of the date of Defendants' offer to settle, attorney Zakre billed 17 hours ($2125) relative to efforts to enforce the Due Process Order.

> The responsibility of the District to commence vocational rehabilitation services after a student's sixteenth birthday is explicit. One reason for such an explicit requirement is the frequency of waiting lists for services such as those needed by Student to transitions into adult life. This District failed to appropriately identify Student's appropriate vocational service needs until approximately April 1997 . . . and a wait for appropriate services has resulted. The wait for services should not be Student's burden without a clear demonstration of the District offering of appropriate services and Parents' rejection of such services. This did not occur in this case.

Id. at 2.

Following this order, the District continued to refuse to provide Lindsay services and continued to press its appeal of the October Due Process Order in this Court. Defendants filed counterclaims, alleging violations of the IDEA and seeking damages. Defendants also filed this action for attorneys' fees. See Lindsay R. v. Bartlett School District, CV-98-88-B. The cases were consolidated and, after a hearing before me on June 19, 1998, the parties agreed to a settlement. The District agreed to provide Lindsay with 10 hours of services for six weeks, at a cost of no more than $1,800. Lindsay was expected to begin services through the Division of Vocational Rehabilitation that summer, as two individuals receiving similar services had left the area, creating an opening for her. Thus, Lindsay no longer needed more than six weeks of transitional services from

the District.  The only remaining dispute centered on the issue of attorneys' fees and costs.

The parties attempted to settle the fee issue, but were unable to reach an agreement.  Defendants filed the instant motion for fees and costs on March 1, 1999.  Plaintiffs have objected, arguing that the requested fee is unreasonable and excessive.

## DISCUSSION

The prevailing party in a case brought pursuant to the IDEA may be entitled to an award of attorneys' fees and costs.  See 20 U.S.C. § 1415(i)(3)(B)(West Supp. 1998); Kathleen H. v. Massachusetts Dept. of Education, 154 F.3d 8, 14 (1st Cir. 1998). The statute provides that:

> In any action or proceeding brought under this subsection, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents of a child with a disability who is the prevailing party.

20 U.S.C. § 1415(i)(3)(B).  The standards governing the award of attorneys' fees set forth by the Supreme Court in Hensley v. Eckerhart apply with equal force to the award of attorneys' fees and costs under the IDEA.  461 U.S. 424, 433 n.7 (1983); see also Kathleen H., 154 F.3d at 14.

Plaintiff concedes that Defendants are the prevailing party. That fact, however, does not automatically entitle Defendants to full compensation for their legal costs. See 20 U.S.C. § 1415(e)(4)(B); Jason D.W. v. Houston Independent School District, 158 F.3d 205, 209 (5th Cir. 1998). Rather, I must determine whether the fees Defendants seek are reasonable. See Hensley, 461 U.S. at 433 (once party crosses "statutory threshold" to establish prevailing party status, district court must determine reasonableness of fee).

To determine a reasonable fee, I begin by calculating the "lodestar" amount - the total number of hours reasonably spent working multiplied by a reasonable hourly rate. See Andrade v. Jamestown Housing Authority, 82 F.3d 1179, 1190-91 (1st Cir. 1996)(citing Hensley, 461 U.S. at 433). The Defendants, as the parties seeking fees, bear the burden of documenting the appropriate number of hours and the billing rates. See Phetosomphone v. Allison Reed Group, Inc., 984 F.2d 4, 6 (1st Cir. 1993). After carefully scrutinizing the reasonableness of Defendants' request, I have discretion to adjust the number of hours billed or the billing rate before calculating the lodestar amount. See Deary v. City of Gloucester, 9 F.3d 191, 197-98 (1st

Cir. 1993); Grendel's Den, Inc. v. Larkin, 749 F.2d 945, 950 (1st Cir. 1984).

Although the lodestar is presumed to be a reasonable fee, I may further adjust the total based on a number of factors and circumstances. See Hensley, 461 U.S. at 434; Lipsett v. Blanco, 975 F.2d 934, 937 (1st Cir. 1992). The most important factor to consider is the degree of success obtained by the prevailing party. See Hensley, 461 U.S. at 436 (results obtained is "most critical factor"); Andrade, 82 F.3d at 1191 (results obtained is "crucial" factor). Where a party achieves only partial or limited success, an award of the entire lodestar amount may be excessive "even where the [prevailing party's] claims were interrelated, nonfrivolous, and raised in good faith." Hensley, 461 U.S. at 436; Jason D. W., 158 F.3d at 210 (upholding reduction in attorneys' fees due to limited success in claim brought pursuant to the IDEA).

> There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. The court necessarily has discretion in making this equitable judgment.

Hensley, 461 U.S. at 436-37.

Defendants were represented by two attorneys employed by the Disabilities Rights Center in Concord, New Hampshire. Attorney

-12-

Sheila Zakre's billing records reflect that she worked 373.25 hours, billing for 302.75 of those hours at a rate of $125 per hour ($37,843.75).[6] Attorney Jennifer Johnson's records reflect that she worked a total of 57.5 hours, and billed 36 of those hours at a rate of $110 per hour ($3,960). Defendants also seek costs of $1,999 to cover the $150 filing fee, $1,477 expert witness expenses, and $372 transcript cost.

The Plaintiff school district argues that the total, $43,802.75, is excessive and unreasonable in light of Defendants' limited success and Defendants' unreasonable rejection of settlement offers. The District also raises several challenges to specific items contained in Defendants' billing records.[7]

### 1. Limited success on "Stay Put" and "Due Process" requests merits reduction in fees.

The Defendants originally sought special education services for Lindsay until the age of 21. With the assistance of counsel,

---

[6] Plaintiff does not appear to take issue with the hourly rates, and Defendants have provided evidence that those rates are reasonable. The dispute here centers on the number of hours billed rather than the rate charged.

[7] Plaintiff also notes that Defendants' records indicate: (1) duplicative and excessive billing; (2) undifferentiated block billing without specification of tasks or issues; (3) inconsistent billing; (4) billing not allowed by law, and (5) unsubstantiated costs. To the extent this Order does not address these issues, I reject Plaintiff's arguments.

they filed an amended due process request seeking placement in the G.R.O.W. program, transitional services, and compensatory education. Defendants also sought Lindsay's placement in G.R.O.W. as a "stay put" request, and sought to enjoin the Riverview school from issuing her diploma. The District argues that I should reduce the Defendants' fee request, as they were not successful on all of their claims and eventually settled for only 10 hours of transitional services a week for six weeks. With regard to Defendants' stay put and due process requests, I agree. I do not share the District's view as to fees generated after October 16, 1997, the date Hearing Officer Siff issued his Due Process Order.

### a. Requested fees prior to Due Process Order

Defendants were largely unsuccessful in their efforts relative to their stay put and due process requests. The stay put request was denied on August 7, 1997. The Due Process Order of October 16 notes that Lindsay's parents were not the "'prevailing party' for the most part." Defendants prevailed in that the District was ordered to convene a team meeting to re-evaluate Lindsay's need for transitional services. They failed, however, in their attempts to secure compensatory education or Lindsay's placement in G.R.O.W. or a similar program.

-14-

Defendants' counsel has already eliminated or reduced some of the fee relative to time spent on the unsuccessful stay put motion.  See Defs.' Response, attachment 11.  As for fees related to the due process motion, Defendants stress their status as the prevailing party to support a fee award.  They note that: (1) the G.R.O.W. request was withdrawn prior to the hearing officer's decision; and (2) no testimony regarding G.R.O.W. was presented by either party at the due process hearing.  Defendants appear to argue that they merely sought transitional services for Lindsay and, because they succeeded, they are entitled to a full award of fees.  I disagree.

Defendants did withdraw the G.R.O.W. request, that much is true.  The record before me, however, indicates that they continued to press for compensatory education above and beyond transition services.  Defendants' post-hearing memorandum explicitly seeks "one year of education to make up for the school district's failure to provide appropriate transition planning."  Indeed, the very possibility of compensatory education should Lindsay prevail at the due process hearing, but lose her spot in the G.R.O.W. program due to an unfavorable outcome on the stay put motion was discussed at that the pre-hearing conference:

> HEARING OFFICER SIFF: With due process violations, there are, there are remedies for due process violations.
> MS. ZAKRE: Well, that's correct, and one of the . . . remedies, is the stay-put provision.
> HEARING OFFICER SIFF: And one of the remedies may be the order that Lindsay's entitled to two years of school; you know, if she loses a year, then maybe she's entitled to two years, as compensation for that. As I said, I'm not saying that that's the result of this case, but remedies are available for districts that act improperly.

Pre-hearing Conference Report (July 31, 1997), Transcript at 45.

Defendants were aware that compensatory education was a possible remedy for a due process violation. It is reasonable to find, therefore, that even after the G.R.O.W. program became unavailable, Defendants continued to pursue compensatory education for Lindsay. As noted above, their post-hearing memorandum simultaneously withdraws the G.R.O.W. request and seeks "compensatory education." Defendants offer no evidence to suggest they merely sought transition services.

Accordingly, I will exercise my discretion to reduce the lodestar amount by 50 percent as to any attorneys' fees sought prior to the issuance of the Due Process Order, October 16, 1997. See Andrade, 82 F.3d at 1191 (magistrate had discretion to reduce lodestar by 91 percent); Jason D.W., 158 F.3d at 210 (district court had discretion to reduce lodestar by 75 percent in IDEA action where party seeking fee award did not prevail on every

-16-

issue).  I do so because the Defendants, while technically the prevailing party for purposes of the IDEA's attorneys' fees provision, achieved only limited success on their due process request.

Attorney Zakre billed 184 hours at $125 per hour ($23,000) up until the Due Process Order.  Attorney Johnson billed 35 hours at $110 per hour ($3,850).  Thus, the lodestar for billing between June 20, 1997, and October 16, 1997, is $26,850. Because I exercise my discretion to reduce the lodestar amount by 50 percent, Defendants are entitled to $13,425 for fees generated during this time period.  See Andrade, 82 F.3d at 1191; Jason D.W., 158 F.3d at 210.

**b.  Requested fees subsequent to due process order**

Defendants filed a motion to enforce the Due Process Order in November 1997, after the District cut off Lindsay's interim services and failed to offer more.  Specifically, they sought a hearing to determine whether the District had met its obligations under the Due Process Order.

In response to a request from the hearing officer, Defendants filed a proposed order seeking "compensatory education" until May 1999.  He ordered the District to provide Lindsay with 10 hours of services per week through the end of the

spring semester, continuing through the summer and fall if necessary. The District refused to comply, appealing the Due Process Order in this Court and prompting Defendants to file counterclaims. The parties, as noted above, eventually agreed to settle for 10 hours of services for six weeks.

The District argues that the Defendants achieved only limited success, rendering the request for attorneys' fees excessive and unreasonable. They note that the hearing officer called Defendants' proposed order "unbelievable on its face," that he denied some of the Defendants' pre-hearing motions, and that the Defendants eventually settled for less than they demanded.

I decline to exercise my discretion to reduce the fee award relative to the Defendants' efforts to enforce the Due Process Order and fight the District's appeal of that order. Defendants ultimately prevailed in their efforts to enforce the order, by coming to a settlement agreement whereby the District agreed to provide Lindsay with transitional services and drop its appeal of the Due Process Order. That some of Defendants' motions were denied along the way is of no import to my analysis. Nor is the fact that Defendants' proposed order sought "compensatory education." The record is clear that, after the Due Process

Order, Defendants primarily sought transitional services. In that respect, they prevailed before the hearing officer. Although they settled for less than they demanded and less than the hearing officer ordered, the gap in time between the order and the settlement made additional relief unnecessary. Defendants achieved what they sought - transitional services for Lindsay until she could begin vocational rehabilitation - and are thus entitled to a full award of fees for work relative to enforcing the Due Process Order.

Attorney Zakre billed a total of 118.75 hours subsequent to the Due Process Order. Seven of those hours, as discussed more fully below, involved merely calculating her fee. Thus, Defendants are entitled to recover $13,968.75 (111.75 hours at $125 per hour). Attorney Johnson billed only one hour subsequent to the Due Process Order. As discussed below, because attorney Johnson spent that hour merely documenting her fee, Defendants are only entitled to receive a reduced rate of $60 for that hour.

**2. Defendants are not entitled to the full amount requested for hours expended reviewing billing records and calculating fee.**

Defendants are entitled to recover attorneys' fees for time spent on fee-related work. See Brewster v. Dukakis, 3 F.3d 488, 494 (1st Cir. 1993). Where the work involved is merely the documentation or calculation of billing information, however, I

may award compensation at a reduced rate. See id. Plaintiff argues that I should reduce the rate associated with such work to "a paralegal rate or approximately one-half the attorney's regular rate." Defendants' attorneys billed at two hourly rates, $125 for attorney Zakre and $110 for attorney Johnson. I will award a fee for hours spent documenting billing information at a reduced rate of $60 per hour for each attorney.

The billing records indicate that attorney Zakre billed a total of seven hours (6/24/98 - 5 hours; 1/27/99 - 1.25; 1/29/99 - .75) for fee-related work attributable to documentation or calculation. The entries for those dates, in some cases, indicate that attorney Zakre also billed for legal work. She did not, however, specify how much of the total time she devoted to documenting her fee on those days. Thus, I will reduce the applicable billing rate for the entire time relative to those entries. See, e.g., Domegan v. Ponte, 972 F.2d 401, 425 (1st Cir. 1992), vacated on other grounds, 507 U.S. 956 (1993); Furtado v. Bishop, 635 F.2d 915, 922 (1st Cir. 1980). Attorney Johnson billed one hour on February 25, 1999, at her full rate attributable to "reviewing time sheets; draft affidavit re time records." I will likewise reduce the rate for that hour to $60. Defendants are therefore entitled to recover $480 from the

-20-

District to cover these fees.

To the extent Plaintiff argues Defendants are not entitled to fees accrued while trying to secure a fee award pursuant to the IDEA, I reject Plaintiff's argument. A prevailing party may recover costs incurred attempting to secure his attorneys' fees pursuant to § 1415(i)(3)(B). See 153 A.L.R. Fed. 1, 116 at § 21[a] (West 1999)(citing Kerry B. v. Union 53 Public Schools, 882 F.Supp. 184, 190 (D. Mass. 1995)(awarding attorneys' fees incurred in fee dispute pursuant to IDEA case)).

### 3. Defendants' fee is not subject to reduction due to rejection of settlement offers.

Plaintiff argues that Defendants are not entitled to attorneys' fees accruing after Plaintiff's November 20, 1997, offer to settle. Plaintiff invokes 20 U.S.C. § 1415(i)(3)(D), which states:

> (i) Attorneys' fees may not be awarded and related costs may not be reimbursed in any action or proceeding under this section for services performed subsequent to the time of a written offer of settlement to a parent if -
> (I) the offer is made within the time prescribed by Rule 68 of the Federal Rules of Civil Procedure or, in the case of an administrative proceeding, at any time more than 10 days before the proceeding begins;
> (II) the offer is not accepted within 10 days; and

> (III) the court or administrative hearing officer finds that the relief finally obtained by the parents is not more favorable to the parents than the offer of settlement.

20 U.S.C. § 1415(i)(3)(D)(West Supp. 1998). Plaintiff argues that, because Defendants ultimately settled for less than what Plaintiff offered, Defendants acted unreasonably and should not be entitled to fees accruing after this date. I disagree.

Lindsay's parents did not act unreasonably in rejecting the District's offer. The District offered 10 hours of services for 13 weeks. Assuming those services began immediately, they would have ended in late February 1998. Lindsay and her parents believed that she would not be eligible for Center of Hope services until possibly as late as May 1999.[8] Thus, accepting the District's offer would have left Lindsay with no services from February 1998 until possibly more than one year later. As such, the Defendants were substantially justified in rejecting the District's offer. See 20 U.S.C. § 1415(i)(3)(D)("Notwithstanding subparagraph (D), and award of attorneys' fees and related costs may be made to a parent who is the prevailing party and who was substantially justified in rejecting the settlement offer.").

---

[8] As noted above, Lindsay actually became eligible for vocational rehabilitation services on July 1, 1998.

Moreover, Hearing Officer Siff awarded Defendants 10 hours of services per week for the remainder of the spring 1998 semester, continuing through the summer and fall semester if necessary. This relief, though never actually obtained, is far more generous than the District's November 20 offer of 10 hours per week for 13 weeks. Rather than comply with the order, the District pursued its appeal in this Court until the parties settled in June 1999 for 10 hours per week for six weeks. Because Lindsay was eligible for vocational rehabilitation a matter of weeks later, she no longer needed mentoring services for 13 weeks, as offered by the District, or nearly a year, as ordered by the hearing officer. In these circumstances, the fact that the Defendants settled for less than what was originally offered should not bar them from recovering attorneys' fees under the IDEA. To hold otherwise would allow a school district to avoid liability, while simultaneously increasing a student's legal bills, by simply appealing unfavorable decisions until the student no longer required the ordered relief. The Defendants should not be penalized for the District's decision to appeal. Defendants, therefore, are entitled to an award of attorneys' fees accruing after November 20, 1997.

Plaintiff also argues that Defendants are not entitled to fees generated after the District made offers to settle the fee dispute. I reject Plaintiff's argument. First, it is not clear that § 1415(i)(3)(D) applies to situations such as this, where the settlement offer relates solely to the parties' dispute over attorneys' fees rather than the student's education. Even assuming that § 1415(i)(3)(D) does apply here, it would not bar or otherwise reduce Defendants' recovery.

The District's first written settlement offer of $10,000 was dated January 19, 1999. I have already found above that Defendants are entitled to recovery of fees totaling $13,425 generated prior to October 16, 1997. I have also found that they are entitled to another $13,968.75 for fees after that date, as well as $480 for time spent documenting the fee. Of the amount generated after October 16, 1997, $12,256.25 accrued prior to the District's first settlement offer.[9] The total fee award, relative to hours worked prior to the District's offer on January 19, 1999, is therefore $25,681.25. This award is clearly more favorable to Defendants than the Plaintiff's first offer of $10,000, as well as its second and third offers ($15,000, January

_____

[9] Zakre, 95.25 hours at $125/hour; 5 hours at $60/hour; Johnson, 1 hour at $60/hour.

25; $21,000, January 28).  Thus, the IDEA would not bar Defendants from recovering fees generated after the District's written offers to settle the fee dispute.  See §  1415(i)(3)(D)(III)(court must find that relief finally obtained by the parents is not more favorable than the offer of settlement in order to bar recovery of fees).

## CONCLUSION

Defendants, as the prevailing party, are entitled to an award of attorneys' fees from Plaintiff totaling $27,873.75.[10]  I also award costs in the requested amount of $1,999, to reach a total award of $29,872.75.  Defendants' motion for attorneys' fees (document no. 27) is therefore granted in part and denied in part.

SO ORDERED.

_____
Paul Barbadoro
Chief Judge

July 29, 1999

cc:  Gerald Zelin, Esq.
     Sheila Zakre, Esq.

_____

[10] The total award represents $13,425 for work prior to the Due Process Order, $13,968.75 for work enforcing the order, $480 for documentation or calculation of the fee, and $1,939 in costs.