**In the Matter of Marvin E. MOYE, Debtor.**

**Lowell T. Cage, Appellee,**

v.

**Hardy Rawls Enterprises, L.L.C., Appellant.**

No. 11–20534.

United States Court of Appeals, Fifth Circuit.

Aug. 21, 2012.

See also, 437 Fed.Appx. 338.

Brian Bakke Kilpatrick, Esq., Theresa D. Mobley, Cage, Hill & Niehaus, L.L.P., Houston, TX, for Appellee.

Ronald D. Hinds, Coppell, TX, for Appellant.

Before WIENER, ELROD, and SOUTHWICK, Circuit Judges.

PER CURIAM: *

JMW Auto Sales ("JMW"), and Marvin and Joan Moye, husband and wife (collectively, "Debtors"), were engaged in the used car business. At the end of October 2007, an involuntary Chapter 7 bankruptcy petition was filed against JMW, and a week later the Moyes filed a voluntary Chapter 7 petition. The cases are being jointly administered.

The bankruptcy court appointed Appellee Lowell T. Cage ("Trustee") as trustee and authorized him to continue operating the business for the benefit of the bankruptcy estate. At issue are substantial payments made by JMW to a creditor, Appellant Hardy Rawls Enterprises, LLC ("HRE"), during the 90 days preceding the bankruptcy filings.

HRE filed a proof of claim for $1,756,012, designating $1,556,012 as secured. The Trustee and HRE eventually filed cross-motions for summary judgment on the issue whether the payments in question constitute avoidable preferences under 11 U.S.C. § 547. HRE appeals the holdings that (1) agree with the Trustee that those payments are avoidable preferences and (2) reject HRE's affirmative defenses that they were made in the "ordinary course of business" or were "earmarked." We affirm.

## I. FACTS AND PROCEEDINGS

### A. Background

In conducting their used car business, Debtors' purchases of automobiles for resale were financed by floor plan lenders, including Automotive Finance Corporation ("AFC"), Dealer Service Corporation ("DSC"), and HRE. In 2003, Debtors began to finance their retail sales of cars to customers in-house. In so doing, Debtors entered into installment contracts with their customers, creating liens on the vehicles in question and requiring payments of principal and interest at rates that averaged between 21 and 23 percent per annum. Debtors then sold assemblages or "pools" of such installment contracts to "pool participants" pursuant to master agreements. Debtors would collect customers' monthly payments and remit them to pool participants. The purchase prices for such pools equaled the aggregate principal balances on the retail customers' loans, so that the pool participants would receive principal, interest, and finance charges pursuant to the installment contracts. In the master agreements, Debtors guaranteed that they would replace installment contracts on which customers had defaulted with new installment contracts added to the pool. All together, the pool participants invested a total of approximately $9.7 million with the Debtors.

A review of Debtors' business and accounting records by the Trustee reveals that when such defaults occurred, Debtors would continue to pay the scheduled monthly installments to the pool participants, even though payments from defaulting customers were no longer being received. The Trustee's review also shows that, when such defaults caused Debtors to receive accelerated payments or to repossess vehicles, Debtors retained those payments and any revenue from resale, rather than applying such receipts to the pool participants' balances. That review also demonstrates that virtually all of the funds received by Debtors, whether from customers, floor plan lenders, or pool partici-

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

pants, were commingled without distinction in Debtors' bank accounts.

When they began to experience financial difficulties in June and July 2007, Debtors defaulted on payments owed to pool participants. Additionally, when the MRB Group, the largest group of pool participants, learned that about 30% of its pool's installment contracts were no longer secured because Debtors had repossessed and resold the vehicles, the MRB Group demanded an accounting from Debtors. As a result, Debtors and the MRB Group entered into a note sale agreement in August 2007, under which Debtors were required to sell the active installment contracts in the MRB Group's pool and deposit the proceeds in a trust account. Debtors also obtained the consent of some of the other pool participants to sell the active installment contracts in their pools to a third party.

Debtors then reached an agreement with Mid–Atlantic Finance Co. Inc. under which Mid–Atlantic purchased active installment contracts of each customer's outstanding principal balance at a discounted price of 83 cents on the dollar. Under that agreement, Mid–Atlantic made payments to Debtors on August 17, September 4, September 27, and October 18, 2007 totaling $1.927 million. Except for funds designated for the MRB Group, payments received from Mid–Atlantic were deposited by Debtors into their general operating bank accounts.

Central to the preference issue in this case, debtors made eight payments to HRE between July 27 and October 15, 2007, totaling approximately $146,712.

## B. Proceedings

The involuntary Chapter 7 bankruptcy petition against JMW was filed on October 31, 2007, and the Moyes filed a voluntary Chapter 7 petition a week later. For these cases, which are being administered jointly, the bankruptcy court appointed Cage to serve as Trustee and authorized his continued operation of the business for the benefit of the estate.

HRE filed a proof of claim for $1,756,012, of which $1,556,012 was designated as secured. The bankruptcy court disallowed HRE's claim after determining that it lacks a security interest in Debtors' inventory because it had failed to file UCC financing statements to perfect such interests.[1] The district court affirmed that ruling on appeal, as did we.[2]

In July of 2009, the Trustee filed a complaint against HRE to recover $143,167.37 of alleged preferential transfers by Debtors. The Trustee filed a motion for summary judgment on this claim, but the bankruptcy court denied it, concluding that a genuine issue of fact existed as to HRE's affirmative defense that the transfers in question had been made in the ordinary course of business. The bankruptcy court then recommended that the reference of the adversary proceeding be withdrawn and that the case proceed in the district court because a jury trial had been demanded.

After the district court took over the case, the Trustee and HRE filed opposing motions for summary judgment. In largely granting the Trustee's motion and denying HRE's motion, the district court ruled that the Trustee had proved that all but one of the payments in question were

---

1. *In re Moye*, No. 07–37770, 2009 WL 2243665 (Bankr.S.D.Tex. July 22, 2009) (ECF Doc. No. 348); *See also* Memorandum of Law Concerning Title and Liens on Vehicles in Texas, No. 07–37770, 2008 WL 4179239 (Bankr.S.D.Tex. Aug. 29, 2008) (ECF Doc. No. 212).

2. 2010 WL 3259386 (S.D.Tex. Aug. 17, 2010); 437 Fed.Appx. 338, (5th Cir.2011).

avoidable preferences and that HRE had failed to prove its affirmative defenses of "ordinary course of business" and "earmarking." The one payment that the district court held was not an avoidable preference was that of July 27, 2007, because it had occurred more than 90 days before the filing dates of the bankruptcy petitions, and HRE was not an insider. HRE timely appealed.

## II. *ANALYSIS*

### A. Standard of Review

We review a grant a summary judgment *de novo*.[3] Summary judgment is appropriate when the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[4] Although we view the evidence in the light most favorable to the non-moving party, "[u]nsupported allegations or affidavit or deposition testimony setting forth ultimate or conclusory facts and conclusions of law are insufficient to defeat the motion for summary judgment."[5]

### B. Merits

We have carefully considered the pertinent provisions of the record on appeal and have applied the law, as related in the briefs of the parties and as determined in our own independent research.[6] We have also listened carefully to the positions of the parties as articulated by counsel at oral argument. As the result of our consideration of the operable facts and applicable law, we are satisfied that the district court ruled correctly in granting the Trustee's motion for summary judgment grounded in the debtors' payments to HRE constituting preferences under 11 U.S.C. § 547(b) and in denying HRE's motion for summary judgment grounded in its affirmative defenses of "ordinary course of business" and "earmarking." Accordingly, for substantially the same reasons as those set forth in the district court's thorough and well-reasoned Order, we affirm that court's judgment in all respects.[7]

AFFIRMED.

---

**3.** *Hinsley v. Boudloche (In re Hinsley)*, 201 F.3d 638, 642 (5th Cir.2000).

**4.** Fed.R.Civ.P. 56(a).

**5.** *Clark v. Am.'s Favorite Chicken Co.*, 110 F.3d 295, 297 (5th Cir.1997) (citation omitted).

**6.** In its appellate brief, HRE states that it "fe[lt] compelled to bring" to our attention that the district court ruled on the cross-motions for summary judgment without having the Trustee's complaint and other pleadings before it. HRE contends that the district court committed error in doing so. Besides one sentence vaguely referencing Fed.R.Civ.P. 54, however, HRE fails to cite any authority for its contention. Accordingly, to the extent that this statement was intended to raise an issue on appeal, it is waived. *See Jason D.W. ex rel. Douglas W. v. Houston Indep. Sch. Dist.*, 158 F.3d 205, 210 n. 4 (5th Cir.1998) (per curiam).

**7.** We note that in addressing the Trustee's preference claim under 11 U.S.C. § 547(b), the district court did not directly cover the preliminary issue whether the transfers to HRE were "of an interest of the debtor in property." *Coral Petroleum, Inc. v. Banque Paribas–London*, 797 F.2d 1351, 1355 (5th Cir.1986) ("For a preference to be voided under sections 547, 'it is essential that the debtor have an interest in the property transferred so that the estate is thereby diminished.'" (citations and quotation omitted)). In analyzing HRE's affirmative defense of earmarking, however, the district court ad-

---

dressed this issue when it concluded that (1) HRE had failed to present any competent summary judgment evidence establishing that Debtors did not have an interest in the property that was transferred to HRE, and (2) HRE had failed to controvert the Trustee's summary judgment evidence showing such an interest.