# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
August 17, 2012

Lyle W. Cayce
Clerk

No. 11-40518

S. H., by next friend A. H., by next friend E. H.,

> Plaintiff - Appellant Cross-Appellee

v.

PLANO INDEPENDENT SCHOOL DISTRICT,

> Defendant - Appellee Cross-Appellant

---

PLANO INDEPENDENT SCHOOL DISTRICT,

> Plaintiff - Appellee Cross-Appellant

v.

A. H., as next friend S. H.; E. H., as next friend S. H.,

> Defendants - Appellants Cross-Appellees

---

Appeals from the United States District Court
for the Eastern District of Texas
U.S.D.C. No. 4:08-cv-96

---

Before KING, PRADO, and HAYNES, Circuit Judges.

No. 11-40518

PER CURIAM:[*]

S.H., a child with severe autism and speech impairment, sought to recover the cost of his private schooling from Plano Independent School District through a due process hearing before a special education hearing officer. S.H. alleged that the School District had denied him a free appropriate public education in violation of the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.* The hearing officer ordered the School District to reimburse S.H. for educational expenses incurred during the summer of 2006 before S.H. began classes at the School District and for the first nine weeks of the 2006–2007 school year. The hearing officer denied reimbursement for the period of time that followed. S.H. and the School District each filed suit in federal district court challenging various aspects of the hearing officer's decision. The district court consolidated the lawsuits and ultimately affirmed the decision of the hearing officer, except that it reduced the compensation awarded to S.H. The district court also denied S.H.'s motion for attorneys' fees. S.H. appealed several aspects of the district court's judgment, and the School District filed a cross-appeal raising several challenges as well. For the reasons stated below, we AFFIRM the judgment of the district court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The child at issue, S.H.,[1] was born on May 21, 2003 and was diagnosed with severe autism on October 12, 2004. At the end of 2005, S.H. began attending Wayman Learning Center ("WLC"), a private school, where he

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] S.H. acted through his parents in this litigation, and as a procedural matter, Plano Independent School District brought suit against S.H.'s parents. For simplicity's sake, we refer to S.H.'s parents and S.H. collectively as "S.H.," unless otherwise noted or made apparent from context.

received a program of applied behavior analysis—a method for teaching autistic children—on a one-on-one basis.

S.H.'s parents requested a meeting with Plano Independent School District ("PISD") to develop an Evaluation and Review Plan for S.H. The meeting was held on April 7, 2006, and PISD completed a Full Individual Evaluation ("FIE") of S.H. on May 12, 2006. PISD's evaluation confirmed that S.H. was at the severe end of the autism scale. The FIE recommended, *inter alia*, that S.H.'s Admission, Review, and Dismissal Committee ("ARDC") assess S.H.'s eligibility for special education services because of his autism and speech impairment.

On May 18, 2006, an ARDC developed an Individual Education Plan ("IEP") for S.H. that recommended that S.H. receive special education five days a week for two and a half hours each day at PISD's Beaty Early Childhood School ("Beaty") in an integrated pre-kindergarten classroom beginning in August 2006. The May 18, 2006 IEP did not recommend Extended School Year ("ESY") services during the summer preceding the 2006–2007 school year.

At the beginning of the 2006–2007 school year, S.H.'s parents enrolled S.H. in both Beaty and WLC. S.H. attended Beaty three days per week, as opposed to the five days recommended in his IEP. On days S.H. did attend classes at Beaty, he was often at least fifteen minutes late. Within the first three weeks of the 2006–2007 school year, PISD held another ARDC meeting on August 25, 2006 to review and modify the May 18, 2006 IEP at the suggestion of S.H.'s teacher and speech pathologist, who recognized the need to place S.H. in a smaller, more restrictive educational environment.

Several additional ARDC meetings were held, with the last occurring on September 5, 2007. Ultimately, S.H.'s parents did not agree with the ARDC's recommendations and decided not to use any of the services PISD offered. The recommended services were "(1) in-home training for three hours per week for two weeks to be followed by one hour sessions per week through May 13, 2008,

No. 11-40518

(2) parent training for three hours, and (3) occupational therapy for 840 minutes per year of direct services and 840 minutes per year of staff consultation." S.H.'s parents chose not to re-enroll S.H. at Beaty for the 2007–2008 school year.

On July 27, 2007, S.H. requested a due process hearing under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq*. S.H. alleged, *inter alia*, that he had not progressed during the 2006–2007 school year and that PISD improperly failed to provide ESY services from his third birthday on May 21, 2006, until the 2006–2007 school year began in August 2006.

A Special Education Hearing Officer ("SEHO") conducted a due process hearing on September 24 and 26, 2007, and October 25, 2007. The SEHO issued a decision on November 27, 2007 but later withdrew that decision and issued an amended decision on January 7, 2008. In the amended decision, the SEHO found that procedural defects in the composition of the May 18, 2006 ARDC meeting resulted in the denial of a free appropriate public education ("FAPE") to S.H. According to the SEHO, as a consequence of the deficiencies in the composition of the ARDC, S.H. did not receive ESY services during the summer of 2006 or appropriate placement at the beginning of the 2006–2007 school year. The SEHO concluded that the deficiencies in the May 18, 2006 IEP were corrected by the IEP developed at the August 25, 2006 ARDC meeting, but found that S.H. did not show educational progress until the first nine weeks of the 2006–2007 school year had passed. Consequently, the SEHO ordered PISD to reimburse S.H.'s parents for the educational expenses they incurred at WLC during the summer of 2006 and the first nine weeks of the 2006–2007 school year. Ultimately, the amount the SEHO awarded S.H. was $20,475.00, which reflected 315 hours of educational services at the rate of $65 per hour. The SEHO further concluded that S.H. made educational progress and received a FAPE at all other relevant periods of time.

4

No. 11-40518

S.H., by next friends A.H and E.H., filed a lawsuit against PISD on March 24, 2008, and PISD filed suit against A.H. and E.H. as next friends of S.H. on April 8, 2008. Both S.H. and PISD challenged various aspects of the SEHO's decision. S.H. also sought to recover attorneys' fees. The two actions were consolidated on May 30, 2008. The district court agreed with the SEHO that the May 18, 2006 ARDC was not composed of the required members and that this defect resulted in a denial of a FAPE for S.H. during the summer of 2006, as well as the first three weeks of the 2006–2007 school year. The court did not require a showing of actual progress (which the SEHO found was apparent after the first nine weeks of the 2006–2007 school year) to support the conclusion that S.H. received adequate educational opportunities under the IDEA, and thus the court reduced the compensation awarded to S.H.'s parents to $14,625.00.

Regarding S.H.'s education during the 2006–2007 school year, the district court applied 19 Texas Administrative Code § 89.1096(f) in rejecting S.H.'s challenge to the implementation of his IEPs. Section 89.1096(f) limits parents' ability to raise such challenges when they choose to enroll a child in public and private schools. The court concluded that the parents' decision to enroll S.H. in both WLC and Beaty made the due process hearing an inappropriate forum under Texas law for raising such a challenge.

With regard to S.H.'s motion for attorneys' fees, the district court determined that S.H. was a prevailing party but was nonetheless not entitled to an award of fees. S.H. had rejected PISD's offer to settle the case for $15,500.00, which was greater than the amount that S.H. was ultimately awarded. Thus, the court concluded that the attorneys' fees S.H. incurred after the settlement offer were not recoverable under 20 U.S.C. § 1415(i)(3)(D)(i) and that none of the exceptions to the fee bar applied. The court further concluded that fees were not recoverable for work performed before PISD offered to settle because S.H. unreasonably protracted the final resolution of the controversy.

5

No. 11-40518

On appeal, S.H. contends that (1) the district court erroneously applied 19 Texas Administrative Code § 89.1096(f) in determining the amount of compensation to award S.H.; (2) the district court erred by reducing the amount of relief awarded by the SEHO; and (3) the district court erred in denying an award of attorneys' fees to S.H.  PISD filed a cross-appeal asserting that (1) the district court's judgment awarding relief to S.H. should be reversed because all claims related to the May 18, 2006 ARDC meeting are barred by the statute of limitations; (2) the judgment awarding relief to S.H. should be reversed because there were no procedural defects regarding the composition of the May 18, 2006 ARDC; (3) the district court erred by granting S.H. relief because, even if there were a defect in the composition of the May 18, 2006 ARDC, it did not harm S.H.; and (4) S.H. failed to prove that he was entitled to ESY services for the summer of 2006, and thus no relief should have been awarded compensating S.H. for expenses incurred during this period.  For the reasons stated below, we affirm the judgment of the district court.

## II. DISCUSSION

A state receiving federal assistance under the IDEA must assure that "[a] free appropriate public education is available to all children with disabilities residing in the State between the ages of 3 and 21."  20 U.S.C. § 1412(a)(1)(A). "The free appropriate public education that a disabled student is entitled to receive under the IDEA must be tailored to his particular needs by means of an individual educational program . . . ." *Cypress–Fairbanks Indep. Sch. Dist. v. Michael F.*, 118 F.3d 245, 247 (5th Cir. 1997) (internal quotation marks omitted). The education must be offered in an integrated environment, alongside non-disabled children to the greatest extent possible.  *Id.*  In Texas, an ARDC prepares a student's IEP.  *Id.*

"Our role under the IDEA is purposefully limited.  Congress left the choice of educational policies and methods where it properly belongs—in the hands of

No. 11-40518

state and local school officials." *White v. Ascension Parish Sch. Bd.*, 343 F.3d 373, 377 (5th Cir. 2003) (citation and internal quotation marks omitted). A federal district court's review of a special education hearing officer's decision in a due process hearing is "virtually *de novo.*" *Michael F.*, 118 F.3d at 252 (citation and internal quotation marks omitted). The district court "must receive the record of the administrative proceedings and is then required to take additional evidence at the request of any party . . . ultimately reach[ing] an independent decision based on a preponderance of the evidence." *Id.* (citations omitted). "The burden of proof in an administrative hearing challenging an IEP is properly placed upon the party seeking relief." *Schaffer v. Weast*, 546 U.S. 49, 62 (2005).

"[This court] review[s] *de novo,* as a mixed question of law and fact, the district court's decision that the local school's IEP was appropriate and that the alternative placement was inappropriate under IDEA." *Teague Indep. Sch. Dist. v. Todd L.*, 999 F.2d 127, 131 (5th Cir. 1993) (citation omitted). "The district court's findings of underlying fact . . . are reviewed for clear error." *Michael F.*, 118 F.3d at 252. In addition, "[this court] review[s] the district court's interpretation of Texas law de novo." *Gen. Univ. Sys., Inc. v. Lee*, 379 F.3d 131, 153 (5th Cir. 2004). Finally, "[i]n the absence of an error of law, this Court reviews the district court's award for damages for clear error only." *Dresser–Rand Co. v. Virtual Automation Inc.*, 361 F.3d 831, 843 (5th Cir. 2004).

## A. Dual Enrollment and 19 Texas Administrative Code § 89.1096

Under Texas law, when parents elect to enroll a child in both public and private school, it affects the parents' ability to challenge the implementation of the child's IEP. According to 19 Texas Administrative Code § 89.1096(c), "[p]arents of an eligible student ages 3 or 4 shall have the right to 'dual enroll' their student in both . . . public school and . . . private school," subject to certain conditions. However, under § 89.1096(f), "[t]he procedures in 34 CFR, §§ 300.300, 300.504, 300.507, 300.508, and 300.510-300.518 (relating to due

process hearings) do not apply to complaints regarding the implementation of the components of the student's IEP that have been selected by the parent and the district under subsection (c)."

On appeal, S.H. contends that he was never dually enrolled in WLC and Beaty under 19 Texas Administrative Code § 89.1096(c) and consequently that the district court erred by denying reimbursement for the private school portion of his "dual enrollment." S.H. highlights that "Gail Wayman, the director of WLC, was never invited by [PISD], nor ever attended, any of the ARD[C] meetings held in May, 2006, August, 2006, or March 2007 to provide input." However, § 89.1096(c) does not require the involvement of teachers or other staff of the private school where part of an IEP will be implemented, but instead contemplates cooperation between the child's parents and the school district. Thus, the failure to involve Gail Wayman does not indicate that § 89.1096(f) is inapplicable.

S.H. further contends that he was never dually enrolled within the meaning of § 89.1096(c) because S.H.'s parents and PISD did not collaborate in the development of any IEPs implemented at WLC. Section 89.1096(c)(2) states that "[t]he parent and the district shall determine which special education and/or related services will be provided to the student and the location where those services will be provided." Similarly, § 89.1096(f) makes due process hearings inapplicable to "[c]omplaints regarding the implementation of the components of the student's IEP that have been selected by the parent and the district under subsection (c)." According to S.H., "[t]here is no documentation of any discussions regarding 19 T.A.C. §89.1096(c) dual-enrollment for S.H. in any ARD[C] meeting or in any other document." S.H. contends that the lack of development of IEPs that would be implemented in part at WLC prevents § 89.1096(f) from applying.

No. 11-40518

Despite S.H.'s arguments to the contrary, we conclude that the district court properly determined that S.H. was dually enrolled at Beaty and WLC and that § 89.1096(f) prevented his challenges related to the implementation of IEPs during the period of dual enrollment. S.H.'s parents initially agreed with the recommendations of S.H.'s ARDCs, which provided that S.H. would receive special education and related services at PISD. *See* 19 TEX. ADMIN. CODE § 89.1096(c) ("The public school district where a student resides is responsible for providing special education and related services to a student whose parents choose dual enrollment."). Thus, a collaborative process between S.H.'s parents and PISD did occur with regard to IEPs developed for S.H., and the resulting IEPs called for the exclusive provision of services at Beaty. Nonetheless, the parents of S.H. decided to enroll S.H. in both WLC and Beaty. In light of the unilateral decision by S.H.'s parents to enroll S.H. in both public and private school, S.H. cannot now contend that he was not dually enrolled.[2]

S.H. further contends that "Tex. Admin. Code §89.1096(f) is in direct conflict with IDEA regulations, 34 C.F.R. § 300.148(b)." Section 300.148(b) provides that "[d]isagreements between the parents and a public agency regarding the availability of a program appropriate for the child, and the question of financial reimbursement, are subject to the due process procedures in §§ 300.504 through 300.520." According to S.H., "[t]he Hearing Officer's and District Court's decisions effectively bar dually-enrolled children and their parents from access to due process hearings . . . which was never contemplated by Congress."

---

[2] Similarly, we reject S.H.'s contention that he was not dually enrolled because WLC provided its own educational materials in contravention of § 89.1096(c)(3). To the extent there was a lack of coordination between the schools, it stemmed from the parents' unilateral decision to depart from the recommendations of the IEPs developed for S.H.

9

However, contrary to S.H.'s assertions, the district court's decision does align with the IDEA and governing caselaw. The purpose of the IDEA is "to ensure that all children with disabilities *have available to them* a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A) (emphasis added). The regulations implementing the IDEA also stress that parents must consent to the provision of services or the district "[w]ill not be considered to be in violation of the requirement to make FAPE available to the child because of the failure to provide the child with further special education and related services." 34 C.F.R. § 300.300(b)(4)(iii). In the instant case, S.H.'s parents decided to access only a portion of the services that were determined necessary by the ARDC, even after committee members voiced concerns that failure to access the recommended services would be detrimental to S.H. As noted in *Loren F. v. Atlanta Independent School System*, 349 F.3d 1309 (11th Cir. 2003), "[e]ven where a FAPE is not provided, courts can nevertheless deny reimbursement if a parent's own actions frustrated the school's efforts." *Id.* at 1312; *see also* 20 U.S.C. § 1412(a)(10)(C)(i) ("Subject to subparagraph (A), this subchapter does not require a local educational agency to pay for the cost of education, including special education and related services, of a child with a disability at a private school or facility if that agency made a free appropriate public education available to the child and the parents elected to place the child in such private school or facility."). Thus, the district court's application of § 89.1096(f) does not conflict with the IDEA and does not provide ground for reversal.

## B. The District Court's Reduction of the Relief Awarded by the SEHO

The SEHO concluded that S.H. was entitled to reimbursement for the educational expenses incurred at WLC during the summer of 2006 and the first

nine weeks of the 2006–2007 school year. Both the SEHO and district court found that S.H.'s May 18, 2006 IEP was inappropriate but was corrected by the IEP developed by the ARDC on August 25, 2006. The SEHO awarded compensation through October 12, 2006 based on the finding that S.H. did not achieve actual educational progress until that time.[3] However, the district court determined that S.H. was not entitled to reimbursement for the six weeks following the development of the corrective August 25, 2006 IEP.

S.H. argues that the district court erroneously denied reimbursement for the period between the implementation of the corrective IEP and the date that S.H. demonstrated educational progress. According to S.H., he was entitled to reimbursement for the period of time until he showed an actual benefit from an IEP. He contends that the district court's conclusion rests on a misconstruction of the Supreme Court's decision in *Board of Education of the Hendrick Hudson Central School District v. Rowley*, 458 U.S. 176 (1982), and this court's decision in *Cypress–Fairbanks Independent School District v. Michael F.*, 118 F.3d 245 (5th Cir. 1997). S.H. argues that those cases require that a student show an actual benefit from special education to support the conclusion that a student is receiving the educational opportunities required by the IDEA.

We conclude the district court applied the correct standard in assessing S.H.'s entitlement to reimbursement and correctly determined that S.H was not

---

[3] After issuing an initial decision, the SEHO granted S.H.'s request that the parties be allowed to file requests for amended findings of fact and conclusions of law. The parties filed these requests, and on the basis of the arguments the requests set out, the SEHO issued an amended decision reducing its award of compensation to S.H. from $33,962.50 to $20,475.00. On appeal, S.H. argues for the first time that the SEHO did not have the ability to reconsider his initial judgment based on an October 28, 2010 Office of Special Education Programs ("OSEP") Letter. However, we conclude that the letter does not indicate the SEHO inappropriately amended his decision. The OSEP Letter targeted a policy that allowed reconsideration in a manner that was inconsistent with the time-line requirements of the IDEA. Here, however, the SEHO's amended decision issued within the deadlines set out in the IDEA. *See* 34 C.F.R. § 300.510(a)–(c).

entitled to compensation for expenses incurred in the six weeks following the implementation of his corrective IEP. "Our review of the adequacy of an IEP is limited to two questions: First, has the state complied with the procedural requirements of IDEA? Second, 'is the [IEP] developed through the Act's procedures *reasonably calculated* to enable the child to receive educational benefits?'" *Richardson Indep. Sch. Dist. v. Michael Z.*, 580 F.3d 286, 293 (5th Cir. 2009) (emphasis added and citation omitted) (quoting *Rowley*, 458 U.S. at 206–07). Further, the Supreme Court has stated:

> We think that the congressional emphasis upon full participation of concerned parties throughout the development of the IEP, as well as the requirements that state and local plans be submitted to the Secretary for approval, demonstrates the legislative conviction that adequate compliance with the procedures prescribed would in most cases assure much if not all of what Congress wished in the way of substantive content in an IEP.

*Rowley*, 458 U.S. at 206. Moreover, the Court noted that Congress explicitly found that "in many instances the process of providing special education . . . to handicapped children is not guaranteed to produce any particular outcome." *Id.* at 192 (citation and internal quotation marks omitted). This court has observed that the "IDEA does not entitle a disabled child to a program that maximizes the child's potential. Instead, IDEA guarantees a basic floor of opportunity . . . ." *Michael Z.*, 580 F.3d at 292 (citations and internal quotation marks omitted). Thus, the provision of a FAPE does not necessarily require the achievement of particular educational outcomes. The focus instead is on whether there is an IEP in place that was reasonably calculated to provide the student with appropriate opportunities to learn.

S.H. contends that this court's decision in *Richardson Independent School District v. Michael Z.*, 580 F.3d 286 (5th Cir. 2009), demonstrates that actual educational progress must be shown to support the conclusion that a child is being provided with a FAPE. In *Michael Z.*, the court concluded that the district

court did not err by considering a student's actual progress when assessing whether the district had provided the student with a FAPE. *Id.* at 293–94. However, the *Michael Z.* court was merely applying the factors set out in *Michael F.* for determining "whether an IEP is reasonably calculated to provide meaningful educational benefits under IDEA." *Id.* at 293. The factors in *Michael F.* are: "(1) the program is individualized on the basis of the student's assessment and performance; (2) the program is administered in the least restrictive environment; (3) the services are provided in a coordinated and collaborative manner by the key 'stakeholders'; and (4) positive academic and non-academic benefits are demonstrated." *Michael F.*, 118 F.3d at 253. Thus, although positive educational outcomes can signal that an IEP is appropriate under the IDEA, the appropriateness of S.H.'s IEP ultimately turns on whether it was *reasonably calculated* to provide an educational benefit and does not hinge on the showing of an actual positive outcome.[4]  Consequently, we conclude that the district court properly applied the reasonably-calculated standard from *Rowley* in the instant case, and correctly determined that S.H. was entitled to compensation for the first three weeks of school, as opposed to the first nine.

## C. Attorneys' Fees

"[This court] review[s] an award of attorneys' fees for abuse of discretion and the factual findings upon which the award is based for clear error." *Jason D. W. v. Houston Indep. Sch. Dist.*, 158 F.3d 205, 208 (5th Cir. 1998) (citations omitted). "In any action or proceeding brought under [the IDEA], the court, in its discretion, may award reasonable attorneys' fees as part of the costs to a

---

[4] According to S.H., Congress emphasized the importance of educational outcomes when it re-enacted the IDEA in 2004. However, as set out above, this court has addressed challenges to the appropriateness of IEPs following the IDEA's re-enactment and has continued to conduct its analysis using the reasonably-calculated standard of *Rowley*. *See Michael Z.*, 580 F.3d at 293. Similarly, other circuits have concluded that the framework of analysis set out by *Rowley* remains intact. *See, e.g.*, *J.L. v. Mercer Island Sch. Dist.*, 592 F.3d 938, 951 (9th Cir. 2010) ("Congress did not . . . indicate that it sought to supersede *Rowley*.").

prevailing party who is the parent of a child with a disability."  20 U.S.C. § 1415(i)(3)(B)(i)(I).  This court "has specifically held that in IDEA cases, a prevailing party is one that attains a remedy that both (1) alters the legal relationship between the school district and the handicapped child and (2) fosters the purposes of the IDEA."  *Jason D. W.*, 158 F.3d at 209 (citation omitted).  In addition, "a litigant must attain some judicial imprimatur on a material alteration of the legal relationship in order to be a prevailing party." *El Paso Indep. Sch. Dist. v. Richard R.*, 591 F.3d 417, 422 (5th Cir. 2009).  "An administrative hearing officer's order provides the requisite 'judicial imprimatur' for a party to be considered a 'prevailing party' for attorney's fee purposes, despite the fact that the administrative hearing officer does not have the authority to award attorney's fees." *Id.* at 422 n.4.  Nonetheless, under 20 U.S.C. § 1415(i)(3)(D)(i),

> [a]ttorneys' fees may not be awarded and related costs may not be reimbursed in any action or proceeding under this section for services performed subsequent to the time of a written offer of settlement to a parent if—
>> (I) the offer is made within the time prescribed by Rule 68 of the Federal Rules of Civil Procedure or, in the case of an administrative proceeding, at any time more than 10 days before the proceeding begins;
>> (II) the offer is not accepted within 10 days; and
>> (III) the court or administrative hearing officer finds that the relief finally obtained by the parents is not more favorable to the parents than the offer of settlement.

*See also Gary G. v. El Paso Indep. Sch. Dist.*, 632 F.3d 201, 207 (5th Cir. 2011) ("IDEA provides that a party may not recover attorneys' fees for services performed subsequent to a written settlement offer being made, if the relief obtained is not more favorable than that offer." (citing 20 U.S.C. § 1415(i)(3)(D)(i))).

14

No. 11-40518

However, even if a prevailing party would be prohibited from recovering attorneys' fees under § 1415(i)(3)(D), "an award of attorneys' fees and related costs may be made to a parent who is the prevailing party and who was substantially justified in rejecting the settlement offer." 20 U.S.C. § 1415(i)(3)(E). Further, even when a prevailing party would otherwise be barred from recovering fees incurred after an offer for settlement was made under § 1415(i)(3)(D), "the [IDEA] permits an award of attorney's fees for work performed *prior* to the written offer of settlement." *Richard R.*, 591 F.3d at 424. Nonetheless, a court must reduce the amount of attorneys' fees awarded if it finds that "the parent, or the parent's attorney, during the course of the action or proceeding, unreasonably protracted the final resolution of the controversy." § 1415(i)(3)(F)(i).

PISD made an offer to settle in the amount of $15,500.00 on September 13, 2007. S.H. did not accept the offer, and a due process hearing occurred on September 24 and 26, 2007, and October 25, 2007. Ultimately, the district court awarded S.H. $14,625.00. The district court concluded that S.H. was a prevailing party but was not entitled to an award of attorneys' fees.[5] The court determined that the fee bar under § 1415(i)(3)(D)(i) applied because S.H. rejected an offer for settlement that was more favorable than the relief finally awarded. The court also determined that the exception to the fee bar under § 1415(i)(3)(E) did not apply because S.H. was not substantially justified in rejecting PISD's settlement offer. The district court declined to award attorneys' fees incurred

---

[5] PISD contests the district court's determination that S.H. was a prevailing party because he received an award that was less than the amount offered in settlement. However, we reject PISD's argument in light of this court's recent decision in *Gary G. v. El Paso Independent School District*, 632 F.3d 201 (5th Cir. 2011). In *Gary G.*, this court determined that "a party who rejects a settlement offer and obtains from an administrative hearing officer or the district court no more educational benefit than the settlement offered is . . . a prevailing party." *Id.* at 206–07 (citation and internal quotation marks omitted).

15

No. 11-40518

prior to the offer for settlement, finding that S.H.'s rejection of PISD's offer for settlement unreasonably protracted the litigation.

S.H. contends that the district court erred in applying the fee bar under § 1415(i)(3)(D)(i) because PISD was required to renew its offer to settle while the case was pending before the district court. S.H. argues that, because PISD only offered to settle once (eleven days prior to the administrative hearing) and did not renew its offer, S.H.'s rejection of the offer was substantially justified.[6] However, we reject S.H.'s argument, as PISD was not required to renew its offer for the fee bar to apply. *See* § 1415(i)(3)(D)(i)(I) (stating that the bar to recovery of fees applies when an "offer is made within the time prescribed by Rule 68 of the Federal Rules of Civil Procedure *or*, in the case of an administrative proceeding, at any time more than 10 days before the proceeding begins." (emphasis added)); *see also M.L. v. Fed. Way Sch. Dist.*, 401 F. Supp. 2d 1158, 1165 (W.D. Wash. 2005) (rejecting the argument that an offer to settle made prior to an administrative hearing had to be renewed during proceedings before a district court in order to support the fee bar under § 1415(i)(3)(D)(i)); *Dell v. Bd. of Educ.*, 918 F. Supp. 212, 216 (N.D. Ill. 1995).

S.H. argues that he was substantially justified in rejecting PISD's offer to settle because the relief awarded by the SEHO (i.e., $33,962.50, which the SEHO later reduced to $20,475.00) was greater than the amount PISD offered in settlement. However, the recovery of fees incurred after an offer of settlement is barred when "the relief *finally* obtained by the parents is not more favorable to the parents than the offer of settlement." 20 U.S.C. § 1415(i)(3)(D)(i)(III) (emphasis added). S.H. asserts that the relief ordered by the SEHO and the

_____

[6] On appeal, S.H. also asserts that PISD's offer to settle would not have been enforceable, and that, as a consequence, he was substantially justified in rejecting it. However, because S.H. failed to raise this argument before the district court, the argument is waived. *See Benefit Recovery, Inc. v. Donelon*, 521 F.3d 326, 329 (5th Cir. 2008) ("We will not consider arguments or evidence that was not presented to the district court.").

16

No. 11-40518

district court should both be considered "final," meaning that if either amount exceeds the amount offered in settlement, the fee bar should not apply. However, the plain language of § 1415(i)(3)(D)(i)(III) indicates that the fee bar applies unless the settlement offer exceeds the amount of relief awarded by "the court *or* administrative hearing officer." (emphasis added). Consequently, because PISD offered more compensation in settlement than the district court ultimately awarded to S.H., the district court correctly determined that the bar for post-settlement-offer fees applies.

S.H. contends that the district court erred by declining to award attorneys' fees incurred prior to PISD's offer to settle. The district court found that S.H. had unreasonably protracted the litigation by rejecting PISD's settlement offer and applied § 1415(i)(3)(F)(i) in denying the recovery of any fees. The rejection of a settlement offer, even one that offers more favorable relief than administrative or judicial proceedings ultimately award, does not necessarily constitute unreasonable protraction. *See Gary G.*, 632 F.3d at 210–11. However, "[t]his court and a number of other courts have held that failing to settle can constitute protraction." *Jason D. W.*, 158 F.3d at 211 (citations omitted); *see also Richard R.*, 591 F.3d at 430 (holding that the rejection of a settlement offer constituted unreasonable protraction and prohibited an award of attorneys' fees incurred prior to the offer to settle); *Shelly C. v. Venus Indep. Sch. Dist.*, 878 F.2d 862, 863 (5th Cir. 1989). In opposing S.H.'s motion for attorneys' fees before the district court, PISD highlighted that a finding of protraction can be based on the failure to settle. PISD further urged that "an award of any amount of attorneys' fees to [S.H.] would be completely unreasonable" because of the wasted time and energy caused by S.H.'s rejection of PISD's offer to settle. However, in S.H.'s response to PISD's opposition, S.H. did not even mention the issue of needless protraction, let alone explain why its rejection of PISD's

17

settlement offer did not unreasonably protract the dispute.[7]  In finding that S.H. had unreasonably protracted the controversy, the district court stated that it had been "left to speculate as to why the Plaintiffs rejected the Defendant's settlement offer" and "declined to do so."  In light of S.H.'s failure to explain his rejection of PISD's offer before the district court, the fact that PISD offered S.H. more than he was awarded by the district court, and our review of the record, we conclude that the district court did not abuse its discretion in denying S.H.'s motion to recover attorneys' fees incurred prior to PISD's offer to settle.[8]

## D. The Statute of Limitations

PISD contends that the district court erred by failing to conclude that the statute of limitations barred S.H.'s claims.  We review the district court's determination that the statute of limitations did not bar S.H.'s claims de novo. *Newby v. Enron Corp.*, 542 F.3d 463, 468 (5th Cir. 2008).  Under 20 U.S.C. § 1415(f)(3)(C),

> [a] parent or agency shall request an impartial due process hearing within 2 years of the date the parent or agency knew or should have known about the alleged action that forms the basis of the

---

[7] For the first time on appeal, S.H. suggests that his rejection of the settlement offer did not constitute unreasonable protraction because PISD's offer did not include attorneys' fees.  However, S.H. waived this argument by failing to raise it before the district court. *See Benefit Recovery, Inc.*, 521 F.3d at 329.

[8] We agree fully with Judge Haynes's emphasis on the importance of the recovery of attorneys' fees in education-related litigation, as set out in her partial dissent.  We also agree with Judge Haynes that a more thorough analysis, in the district court's opinion and order on attorneys' fees, of S.H.'s entitlement to attorneys' fees incurred prior to PISD's offer to settle would have been desirable.  Nonetheless, our cases make clear that a party's rejection of an offer to settle *can* be dispositive on the issue of whether that party has engaged in unreasonable protraction, serving as fair notice to S.H. that addressing that issue was important. Thus, after PISD emphasized the waste of time (thirty-two months) and resources that followed S.H.'s rejection of the settlement offer and sought a total denial of fees on that basis, the district court appropriately looked to S.H. to explain its reasons for the rejection. Under these circumstances, it is hard to fault the district court (particularly operating, as we do, under an abuse of discretion standard) for declining to award pre-offer fees to S.H. when no such explanation was provided.

complaint, or, if the State has an explicit time limitation for requesting such a hearing under this subchapter, in such time as the State law allows.

Under 19 Texas Administrative Code § 89.1151(c), "[a] parent or public education agency must request a due process hearing within one year of the date the complainant knew or should have known about the alleged action that serves as the basis for the hearing request."

The district court awarded relief to S.H. based on procedural violations that occurred at the May 18, 2006 ARDC meeting. However, S.H. filed his request for a due process hearing on July 27, 2007, which was more than one year and two months after the meeting at issue. Thus, PISD contends that S.H.'s claims are time barred.

Both the district court and SEHO concluded that 34 C.F.R. § 300.511(f)(2) prevented the application of Texas's one-year statute of limitations. Section 300.511(f)(2) provides that the limitations period "does not apply to a parent if the parent was prevented from filing a due process complaint due to—[t]he [local education agency]'s withholding of information from the parent that was required under this part to be provided to the parent." Like the SEHO, the district court concluded that S.H.'s parents were prevented from filing a timely due process complaint because PISD did not include the appropriate individuals in the May 18, 2006 ARDC meeting.

PISD contends that the district court erred in concluding that the statute of limitations was inapplicable under 34 C.F.R. § 300.511(f)(2), the regulation implementing § 1415(f)(3)(D)(ii). PISD notes that district courts have stated that § 1415(f)(3)(D)(ii) addresses the requirement under § 1415(d)(1)(A) that a school district provide parents with a copy of the procedural safeguards under the IDEA. *See, e.g.*, *El Paso Indep. Sch. Dist. v. Richard R.*, 567 F. Supp. 2d 918, 943 (W.D. Tex. 2008) (discussing the requirement that the district provide

No. 11-40518

"parents a complete explanation of the IDEA procedural safeguards"). PISD asserts that it provided all the required information because S.H.'s parents were repeatedly informed of procedural safeguards under the IDEA, including explanations of the limitations periods in which they could request a due process hearing. PISD argues that, as a consequence, the exception in § 1415(f)(3)(D)(ii) does not apply.

However, we conclude that the district court and SEHO correctly determined that S.H.'s claims were not barred by the statute of limitations. As we discuss in detail below, the May 18, 2006 ARDC was not duly constituted and was missing a statutorily-required member. The resulting deficiencies in the May 18, 2006 IEP formed the basis for relief in this case. S.H.'s parents initially agreed with the decisions made by the May 18, 2006 ARDC, but as the district court noted, S.H.'s "parents were unfamiliar with the IDEA's procedures and services." Furthermore, we agree with the district court's conclusion that, had the required members attended the May 18, 2006 ARDC meeting, the deficiencies in the May 18, 2006 IEP would have been made clear sooner. *See also Rowley*, 458 U.S. at 206 ("[A]dequate compliance with the procedures prescribed would in most cases assure much if not all of what Congress wished in the way of substantive content in an IEP."). Thus, as the district court concluded, the failure to include the required members in the May 18, 2006 ARDC constituted the withholding of required information, and the inadequate composition of the ARDC prevented S.H. from filing a timely request for a due process hearing.

PISD cites several district court cases that it asserts support its position that the exception under § 1415(f)(3)(D)(ii) only applies in instances where the school district fails to provide a copy of procedural safeguards. In particular, PISD highlights *D.C. v. Klein Independent School District*, 711 F. Supp. 2d 739 (S.D. Tex. 2010). In *D.C.*, the plaintiffs sought to invoke the exception to the

statute of limitations under § 1415(f)(3)(D)(ii). *Id.* at 745–46. As is true in the instant case, the parents alleged deficiencies in the composition of the child's ARDC. *Id.* The district court nonetheless held that the plaintiffs' claims were barred by the statute of limitations. *Id.* at 746–49. PISD suggests that *D.C.* indicates that procedural defects in the composition of the ARDC did not amount to a witholding of required information and cannot form the basis for the application of the exception under § 1415(f)(3)(D)(ii).

However, unlike the record in the instant case, the record in *D.C.* showed that the plaintiffs knew about the deficiencies in the relevant IEP more than a year prior to seeking a due process hearing. *Id.* at 745 (describing evidence that plaintiffs "were expressing their belief that the IEP was inappropriate" more than a year before requesting a due process hearing). Thus, in *D.C.*, it could not be said that deficiencies in the composition of an ARDC prevented parents from learning about deficiencies in the student's IEP, making *D.C.* distinguishable from the instant case. The other cases PISD cites are similarly distinguishable. *See C.H. v. Nw. Indep. Sch. Dist.*, 815 F. Supp. 2d 977, 983–87 (E.D. Tex. 2011) (assessing the applicability of the statute of limitations where it was not alleged that a deficiently constituted ARDC prevented parents from timely requesting a due process hearing); *Richard R.*, 567 F. Supp. 2d at 942–49 (same). Thus, the non-binding authority PISD cites as support does not provide grounds for reversing the district court's judgment in this case.

**E. The Composition of the May 18, 2006 ARDC**

PISD contends that the composition of the May 18, 2006 ARDC did not violate procedural requirements of the IDEA because the Act "does not require school districts to have a representative from a private school attend and participate in an ARD committee meeting unless the school district itself is placing or referring a child to a private school in order to receive special education services the district deems are necessary for the child but which it

determines it cannot provide directly." PISD argues that all individuals required to be present under the IDEA were in attendance. The attendees were Jean Belcher, a special language evaluator who served as PISD's representative and was able to interpret the instructional implications of evaluation results; Stephanie Craft, a diagnostician;[9] Debbie Jennings, one of PISD's school psychologists; and S.H.'s parents.

Both the SEHO and the district court found that the composition of the May 18, 2006 ARDC did not meet procedural requirements. Under 20 U.S.C. § 1414(d)(1)(B), absent exceptions not applicable here, an ARDC is composed of:

> (i) the parents of a child with a disability;
> (ii) not less than 1 regular education teacher of such child (if the child is, or may be, participating in the regular education environment);
> (iii) not less than 1 special education teacher, or where appropriate, not less than 1 special education provider of such child;
> (iv) a representative of the local educational agency who—
>> (I) is qualified to provide, or supervise the provision of, specially designed instruction to meet the unique needs of children with disabilities;
>> (II) is knowledgeable about the general education curriculum; and
>> (III) is knowledgeable about the availability of resources of the local educational agency;
> (v) an individual who can interpret the instructional implications of evaluation results, who may be a member of the team described in clauses (ii) through (vi);
> (vi) at the discretion of the parent or the agency, other individuals who have knowledge or special expertise regarding the child, including related services personnel as appropriate; and
> (vii) whenever appropriate, the child with a disability.

---

[9] Ms. Craft purportedly served in the role of S.H.'s special education teacher at the ARDC meeting. However, she was not S.H.'s teacher, and there were no plans that she would serve in this role. At the time of the ARDC meeting, PISD had not employed Ms. Craft as a special education teacher at all.

In concluding that the ARDC was not properly constituted, the district court focused on the absence of a regular education teacher, as well as a representative from WLC.

We agree with the district court that May 18, 2006 ARDC was procedurally defective because it excluded a required member. The inclusion of a representative from WLC as an "individual[] who ha[s] knowledge or special expertise regarding the child" was discretionary under § 1414(d)(1)(B)(vi). However, the ARDC must include at least one teacher "of [the] child" under § 1414(d)(1)(B)(ii). On May 18, 2006, S.H. was enrolled exclusively at WLC and had yet to attend any classes at PISD. Thus, a teacher of S.H. would have been one from WLC or possibly (we need not decide) a teacher from PISD who would soon function in that role. The exclusion of any such teachers prevented the May 18, 2006 ARDC from being duly constituted under the IDEA.

**F. Harm to S.H.**

PISD contends that, even if the May 18, 2006 ARDC meeting was procedurally defective, no relief should have been awarded to S.H. because any procedural defects did not harm him.

Under 20 U.S.C. § 1415(f)(3)(E)(ii),

> [i]n matters alleging a procedural violation, a hearing officer may find that a child did not receive a free appropriate public education only if the procedural inadequacies—
>> (I) impeded the child's right to a free appropriate public education;
>> (II) significantly impeded the parents' opportunity to participate in the decisionmaking process regarding the provision of a free appropriate public education to the parents' child; or
>> (III) caused a deprivation of educational benefits.

No. 11-40518

PISD contends that there was no harm to S.H. because the May 18, 2006 ARDC already received considerable information from WLC.[10]  PISD asserts that it used information from Gail Wayman to develop S.H.'s initial IEP and that S.H.'s parents were fully aware of S.H.'s development and both attended and played prominent roles in the May 18, 2006 ARDC meeting.

Despite the information that the May 18, 2006 ARDC possessed regarding S.H., the district court did not err in concluding that procedural defects in the composition of the May 18, 2006 ARDC resulted in a loss of educational opportunity to S.H.  As the district court found, the harm was S.H.'s failure to receive ESY services for the summer of 2006 and S.H.'s inappropriate initial placement in an integrated pre-kindergarten classroom during his initial weeks at PISD.  The ARDC concluded that S.H. was not eligible for ESY services because S.H. was a new student and PISD did not have specific data regarding S.H.'s potential regression over the course of the summer of 2006.  However, S.H. was severely autistic and had been receiving instruction at WLC prior to the summer of 2006.  We agree with the district court's assessment that, if a representative from WLC had been included in the May 18, 2006 ARDC, the representative would have provided information demonstrating S.H.'s eligibility for ESY services.  Further, the district court did not erroneously determine that, had the May 18, 2006 ARDC been duly constituted, the ARDC would not have placed S.H. in an integrated classroom.  Thus, although the district court's determinations regarding impact of including a representative from WLC are

---

[10] PISD notes that in *Cone v. Randolph County Schools*, 302 F. Supp. 2d 500, 507 (M.D.N.C. 2004), "[t]he court conclude[d] that no procedural violation has occurred since all statutorily-required persons were part of the IEP team, especially where the IEP team had access to the information any non-required parties might have provided."  In *Cone*, however, "all statutorily-required persons were part of the IEP team" and "[t]he only remaining category of potential participants [we]re those that might be invited at the discretion of the parents or the local education agency."  *Id.* (citing 20 U.S.C. § 1414(d)(1)(B)(vi)).

necessarily speculative, they are well supported by the record, and we will not disturb them here.

## G. S.H.'s Entitlement to ESY Services

PISD argues that S.H. did not meet his burden of proof regarding his entitlement to ESY services during the summer of 2006. PISD asserts that ESY services are only appropriate "to prevent 'severe and substantial regression' so that the benefits over the school year would not be 'significantly jeopardized.'" (quoting *Alamo Heights Indep. Sch. Dist. v. State Bd. of Educ.*, 790 F.2d 1153, 1158 (5th Cir. 1986)). PISD also cites 19 Texas Administrative Code § 89.1065(2), which provides:

> The need for ESY services must be documented from formal and/or informal evaluations provided by the district or the parents. The documentation shall demonstrate that in one or more critical areas addressed in the current individualized education program (IEP) objectives, the student has exhibited, or reasonably may be expected to exhibit, severe or substantial regression that cannot be recouped within a reasonable period of time. Severe or substantial regression means that the student has been, or will be, unable to maintain one or more acquired critical skills in the absence of ESY services.

PISD contends that there was no information available at the time of the May 18, 2006 ARDC meeting that would show that S.H. met this requirement for entitlement to ESY services. PISD further notes that, under 19 Texas Administrative Code § 89.065(9), "[d]istricts are not eligible for reimbursement for ESY services provided to students for reasons other than those set forth in this section."

Even though there was no specific data documenting actual regression during breaks from instruction available to the May 18, 2006 ARDC, we agree with both the SEHO and district court that S.H. was nonetheless entitled to ESY services during the summer of 2006. Eligibility for ESY services does not depend exclusively on whether a student has exhibited regression. Instead, eligibility

can be based on whether the student "reasonably may be expected to exhibit . . . substantial regression." 19 TEX. ADMIN. CODE § 89.1065(2). S.H. had been diagnosed with autism that was at the severe end of the scale. He had also been receiving instruction at WLC prior to the summer of 2006. Thus, it is reasonable to expect that S.H. would exhibit "substantial regression that cannot be recouped within a reasonable period of time." *Id.* Further, a subsequent ARDC determined that extensive ESY services were needed during the summer of 2007. This conclusion further suggests that ESY services were, in fact, appropriate under the law during the summer of 2006. Thus, we conclude that the district court did not err in determining that S.H. met his burden of demonstrating entitlement to ESY services during the summer of 2006, and we affirm the judgment of the district court awarding relief based on PISD's failure to make these services available.

## III. CONCLUSION

For the reasons stated above, we AFFIRM the judgment of the district court.

No. 11-40518

HAYNES, Circuit Judge, concurring and dissenting:

I concur in the entirety of the majority opinion and judgment of the court save and except the second portion of Section II.C., addressing the recovery of attorneys' fees for time spent prior to the rejection of the settlement offer. I respectfully dissent from the judgment affirming that portion of the district court's order.

The importance of attorneys' fees recovery in education-related litigation far exceeds that suggested by the relatively brief discussion presented by the majority opinion and underlying district court order, so I begin by placing the issue in context. Faced with the challenges of raising a child with a disability, parents often depend on public educational authorities for assistance in "ensuring equality of opportunity, full participation, independent living, and economic self-sufficiency for" their child. 20 U.S.C. § 1400(c)(1). Congress intended for the IDEA to promote these outcomes, *id.* § 1400(d) (listing the IDEA's purposes), and added the attorneys' fees and related costs provisions now found in 20 U.S.C. § 1415 to increase parents' participation in and access to the IDEA's remedial scheme. *See* Handicapped Children's Protection Act of 1986, Pub. L. No. 99-372, 100 Stat. 796 (1986) (enacting, *inter alia*, attorneys' fees award provision), *abrogating Smith v. Robinson*, 468 U.S. 992 (1984) (holding that, because the IDEA's predecessor statute lacked an attorneys' fees provision, such awards could not be obtained by enforcing education-related rights through other civil rights statutes that permitted awards); *cf.* R. Shep Melnick, *Taking Remedies Seriously: Can Courts Control Public Schools?*, *in* From Schoolhouse to Courthouse 40 (Joshua M. Dunn & Martin R. West eds., 2009) ("Schoolhouse") (observing that the "combination of attorneys' fees and monetary damages significantly increased incentives for private parties to file suits" under federal civil rights statutes, fostered the development of "a private bar . . . to litigate

27

No. 11-40518

[such] cases," and "had the effect not just of increasing the number of cases filed but also of augmenting the political support for this enforcement mechanism").[1]

As many parents unfortunately discover, the quest to procure a free appropriate public education for their child is anything but free, and it certainly is not easy. The IDEA's complex procedural requirements and opaque, jargon-laden provisions easily could discourage even the most dedicated parents from "going it alone." Although the IDEA provides parents a right to use attorneys or other specialized individuals in resolving special education disputes, 20 U.S.C. § 1415(h)(1), it is difficult to find—let alone afford—attorneys to take these cases, especially in those areas where such help is most needed. *See* Lynn M. Daggett, *Special Education Attorney's Fees*, 8 U.C. Davis J. of Juvenile L. & Pol'y 1, 24-29 (2004) (noting disparity in number of IDEA disputes brought in different states, in urban vs. rural districts, and by socioeconomic status).

Some of the children who qualify for services under the IDEA come from underprivileged families lacking in resources to pursue a complex process. *See, e.g.*, Kelly D. Thomason, Note, *The Costs of a "Free" Education*, 57 Duke L.J. 457, 483-84 (2007). It nonetheless falls to such families to prove the inadequacy of a school district's actions and to bear the cost of the experts inevitably required to make such a case. *See Arlington Cent. Sch. Dist. v. Murphy*, 548 U.S. 291, 293-94 (2006) (expert costs); *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 51 (2005) (IEP burden). On top of all this, although Congress intended for the

---

[1] Congress enacted the Handicapped Children's Protection Act explicitly in response to the Supreme Court's ruling in *Smith v. Robinson. See, e.g.*, *Bd. of Educ. v. Diamond ex rel. Diamond*, 808 F.2d 987, 993-94 (3d Cir. 1987) (discussing attorneys' fees amendment); *Handicapped Children's Protection Act of 1985: Hearing on S. 415 Before the Subcomm. on the Handicapped of the S. Comm. on Labor and Human Res.*, 99th Cong. 1 (1985) (opening statement of Sen. Weicker) ("Today we are accepting [the Supreme Court's] invitation to revisit the matter[s] [at issue in *Smith*].").

No. 11-40518

IDEA to provide relatively quick resolution to special education disputes,[2] this more than six year-old case exemplifies the tragic reality that such controversies have a tendency to mature more slowly than the children at issue. *See, e.g.*, *Jamie S. v. Milwaukee Pub. Schs.*, 668 F.3d 481, 484 (7th Cir. 2012) (ending eleven-year-old dispute over school district's alleged systemic violations of IDEA's "child-find" provision by decertifying class).

Against this backdrop, the IDEA comprehensively addresses attorneys' fees in §1415(i)(3). First, in subparagraph (B), it states that attorneys' fees may be awarded "to a prevailing party who is the parent of a child with a disability." *Id.* § 1415(i)(3)(B)(i)(I). The district court found, and the majority opinion affirms, that S.H.'s parents fall in this category. I agree.

---

[2] *See Schaffer*, 546 U.S. at 58-59 (discussing various IDEA provisions intended to make the resolution of special education disputes cost-effective and expeditious, such as mediation and pre-hearing "resolution sessions"); *El Paso Indep. Sch. Dist. v. Richard R.*, 591 F.3d 417, 426 (5th Cir. 2009) ("Early resolution through settlement is favored under the IDEA.").

Parents that resolve their disputes outside of administrative and judicial channels pursuant to these policy preferences, however, may not be able to recover attorneys' fees. This circuit recently joined several others in extending to the IDEA context the Supreme Court's limitation of "prevailing party" status to those who "obtain[] a judgment on the merits, a consent decree, or some similar form of judicially sanctioned relief." *Richard R.*, 591 F.3d at 422 (citing *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health and Human Res.*, 532 U.S. 598, 603-04 (2001), *superseded by statute on other grounds*, OPEN Government Act of 2007, Pub. L. No. 110-175, § 4(a), 121 Stat. 2524 (Freedom of Information Act context)); *see also id.* at 422 nn.3-4 (collecting cases and noting that "[a]n administrative hearing officer's order provides the requisite 'judicial imprimatur'" to support prevailing party status). At least one circuit has extended *Buckhannon* to preclude an IDEA plaintiff from recovering attorneys' fees after resolving her dispute via private settlement. *See Smith v. Fitchburg Pub. Schs.*, 401 F.3d 16, 27 (1st Cir. 2005).

Even if a private settlement provides for attorneys' fees, moreover, it may not be judicially enforceable. *See* 20 U.S.C. § 1415(f)(1)(B)(iii) (limiting judicially-enforceable settlements under the IDEA to settlements reached at a "resolution session"); *cf. Christina A. ex rel. Jennifer A. v. Bloomberg*, 315 F.3d 990, 992-93 (8th Cir. 2003) (holding that district court's approval of settlement, although required by the relevant statute, did not confer "prevailing party" status because the court did not "establish the *terms* of the agreement"; the district court's approval therefore did not constitute "judicial imprimatur" on the same level as a consent decree or judgment, as required by *Buckhannon*).

29

No. 11-40518

Next, subparagraph (D) prohibits awarding fees for services performed "subsequent to the time of a written offer of settlement" if certain conditions are met. *Id.* § 1415(i)(3)(D). I have no quarrel with the majority opinion's conclusion that the offer here meets the conditions set by the statute: the District made a settlement offer more than ten days prior to the administrative hearing; S.H. did not accept it; and the district court ultimately found that S.H. obtained less favorable relief than that originally offered by the District. *Id.* § 1415(i)(3)(D)(i).

Subparagraph (E) then sets out an exception to this prohibition for a prevailing-party parent "who was substantially justified in rejecting [a] settlement offer." *Id.* § 1415(i)(3)(E). The district court and the majority opinion correctly reject S.H.'s two arguments for "substantial justification"—that the District had to renew its offer after the lawsuit was filed and that the award from the administrative hearing officer was greater than the settlement offer.[3]

No one disputes, however, that subparagraphs (D) and (E) apply *only* to "services performed *subsequent* to the time of a written offer of settlement." *Id.* § 1415(i)(3)(D)(i) (emphasis added). Thus, fees for services performed *prior to* the time of the offer in question—i.e., before September 13, 2007—are not excluded by subparagraph (D)'s prohibition. As a result, S.H. need not show that

---

[3] The fact that a hearing officer awards greater relief does not alone suffice to show substantial justification. When substantial justification is at issue, a parent must give an explanation for why the settlement offer did not provide the relief she believed was necessary to provide her child a free appropriate public education. It may be, for example, that the offer failed to include certain compensatory services or reimbursement for private instruction during a time period when the educational agency denied the child a free appropriate public education.

The arguments made in the administrative proceeding that led to a higher award may also show that a parent was "substantially justified" in rejecting a settlement offer. A parent generally should not be penalized, for example, for making a good faith argument urging a novel application of an unclear point of law that could result in the parent's obtaining of greater relief than that offered via settlement. In such a situation, even if the parent ultimately lost on that uncertain point, he may still have been substantially justified in making the argument and pursuing greater relief. I ultimately side with the majority opinion on this issue because S.H. failed to provide any such explanation or analyses.

30

he was "substantially justified in rejecting" the District's settlement offer in order to recover pre-offer fees.[4]

Instead, a separate subparagraph—(F)—addresses the possibility of *reducing* pre-offer fees: "Except as provided in subparagraph (G), whenever the court finds that . . . the parent, or the parent's attorneys, during the course of the action or proceeding, unreasonably protracted the final resolution of the controversy . . . the court shall reduce, accordingly, the amount of the attorneys' fees awarded under this section." *Id.* § 1415(i)(3)(F)(i). This provision says nothing about a written settlement offer or substantial justification. Nor does it address the complete disallowance of attorneys' fees. It provides only for an appropriate reduction of attorneys' fees based upon, among other things, unreasonable protraction. *Id.* § 1415(i)(3)(F).

The district court and the majority opinion, however, do not distinguish between these separate provisions. The entirety of the district court opinion addressing pre-offer fees is as follows:

> With respect to attorneys' fees for work performed prior to the resolution meeting, the "IDEA states that a court shall reduce fees 'whenever the court finds that the parent or the parent's attorney . . . unreasonably protracted the final resolution of the controversy,'" [*El Paso Indep. Sch. Dist. v. Richard R.*, 591 F.3d 417, 429 (5th Cir. 2009) (quoting 20 U.S.C. § 1415(i)(3)(F)(i))]. The court, then, must determine whether the Plaintiffs' rejection of the Defendant's settlement offer unreasonably protracted the final resolution of the controversy such that a further reduction in the fee award is warranted. *See id. The court notes that the parties did not address this issue.* The court, therefore, is left to speculate as to why the Plaintiff rejected the Defendant's settlement offer. The court declines to do so and finds that the Plaintiffs' rejection of the Defendant's settlement offer unreasonably protracted the final

---

[4] I use the term "pre-offer fees" to refer to attorneys' fees incurred for time spent prior to the time of the written offer that the District presented here and that we have found meets the standard for such offers.

No. 11-40518

resolution of the controversy. Based on the foregoing, [recovery of Plaintiffs' pre-offer fees] is hereby DENIED.

*S.H. ex rel. A.H. v. Plano Indep. Sch. Dist.*, No. 4:08-CV-96, 2011 U.S. Dist. LEXIS 32260, *10-11 (E.D. Tex. Mar. 28, 2011) (emphasis added). With little analysis, the majority opinion affirms this conclusion.

The district court's analysis, however, conflates the post-offer-fees bar in subparagraph (D) and its "substantially-justified" exception in subparagraph (E) with the separate "unreasonable-protraction" provision in subparagraph (F), which makes no reference to settlement or substantial justification. If Congress intended to incorporate those requirements into the unreasonable-protraction inquiry, it could have done so. As a matter of statutory construction, we must assume that Congress intended different standards to apply to the fee-reduction provisions in subparagraph (F) than the fee-bar provisions in subparagraphs (D) and (E). "'[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" *Russello v. United States*, 464 U.S. 16, 23 (1983) (quoting *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972)).

Yet, the district court failed to separate these two distinct analyses. The district court cited *Richard R.* in support of the conclusion that "unreasonable rejection" of a settlement offer equals "unreasonable protraction." In *Richard R.*, however, the school district offered everything the parents asked for plus attorneys' fees.[5] *Richard R.*, 591 F.3d at 420-21. There was simply nothing to

---

[5] We previously declined to find unreasonable protraction in a case where both parties took steps that delayed resolution of the dispute and where the plaintiff rejected a settlement offer that would have provided almost triple the amount of relief ultimately obtained, but no attorneys' fees. *See Gary G. v. El Paso Indep. Sch. Dist.*, 632 F.3d 201, 210-11 (5th Cir. 2011). The majority opinion determines that S.H. waived this argument by failing to raise it in the district court. As more fully discussed below, however, neither side raised protraction in the district court, and, in any event, the burden of proving protraction fell to the District. Thus,

32

No. 11-40518

litigate after the offer, yet Richard R's attorney rejected the offer based on an untenable position that the attorney previously had acknowledged as invalid. *Id.* at 428 & n.12.

No one suggests that this case is anything like *Richard R.* The parents and the District had legitimate disputes over how best to provide S.H. with a free appropriate public education and to construct an IEP tailored to that end. The hearing officer and the district court agreed that S.H. deserved relief in the form of reimbursement for private instruction. That the district court ultimately awarded slightly less than the settlement offer does not render S.H.'s parents unreasonable in their pursuit of more relief for their severely autistic son.

For its part, the majority opinion states: "However, '[t]his court and a number of other courts have held that failing to settle can constitute protraction.'" (quoting *Jason D.W. ex rel. Douglas W. v. Houston Indep. Sch. Dist.*, 158 F.3d 205, 211 (5th Cir. 1998); citing *Shelly C. ex rel. Shelbie C. v. Venus Indep. Sch. Dist.*, 878 F.2d 862, 863 (5th Cir. 1989)).[6] *Jason D.W.* made that point with little analysis and ultimately found the parents' position inadequately briefed. *Shelly C.* concluded that fact issues existed as to the reasonableness of fees and the unreasonableness of protraction without discussing what allegedly constituted protraction. *See* 878 F.2d at 864. Neither case held—as the district court did here—that simply rejecting a settlement offer for less relief than ultimately obtained is tantamount to unreasonable protraction.[7]

---

I disagree that this argument is waived.

[6] The majority opinion also cites to *Richard R.*, which was discussed above.

[7] The primary debate in *Jason D.W.* was over whether "unreasonable protraction" refers only to the administrative proceeding or also to the litigation over attorneys' fees.

No. 11-40518

Certainly, rejecting a reasonable settlement offer is one factor that can be considered in analyzing unreasonable protraction. But—other than in a *Richard R.*-like situation where the school district offers everything asked for and then some—it is not the sole factor. *See, e.g.*, *Ector Cnty. Indep. Sch. Dist. v. VB*, 420 F. App'x 338, 347-48 (5th Cir. 2011) (unpublished) (discussing factors to consider in determining "unreasonable protraction," including the parents' good faith, and affirming award of attorneys' fees); *see also Jordan S. v. Bd. of Educ.*, No. 11-C-8362, 2012 U.S. Dist. LEXIS 89259, at *7-9 (N.D. Ill. Jun. 28, 2012) (analyzing parents' overall conduct in the litigation in determining "unreasonable protraction"); *Corpus Christi Indep. Sch. Dist. v. D.H.*, No. C-11-167, 2012 U.S. Dist. LEXIS 79214, at *19-20 (S.D. Tex. Jun. 7, 2012) (applying nuanced analysis to "unreasonable protraction" question). Instead, the district court should analyze unreasonable protraction in the context of the overall conduct of the litigation, including the parents' good faith, the reasonableness of the legal position taken and arguments made, participation in efforts to resolve the litigation, the issues prevailed upon, and the type and amount of relief ultimately obtained.[8] No such analysis was conducted here.

---

[8] *See also J.T. ex rel. A.T. v. Medford Bd. of Educ.*, 118 F. App'x 605, 606-07 (3d Cir. 2004) (unpublished) (affirming unreasonable-protraction finding in light of parents' and parents' attorney's consistent failure to provide requested documents, refusal to cooperatively work with school district, and unilateral termination of key IEP meeting); *Neosho R-V Sch. Dist. v. Clark*, 315 F.3d 1022, 1030-31 (8th Cir. 2002) (declining to find unreasonable protraction where district court had already limited attorneys' fee award; the relief offered via settlement differed from that ultimately obtained; and the school district never offered to settle the specific issue on which the plaintiff prevailed); *Holmes v. Millcreek Twp. Sch. Dist.*, 205 F.3d 583, 594 (3d Cir. 2000) (concluding that fee award was excessive because parents were no longer prevailing parties on certain issues and two separate state administrative authorities had found that the parents and their attorney "'contributed to' the needlessly 'protracted proceedings'"); *Phelan v. Bell*, 8 F.3d 369, 375 n.6 (6th Cir. 1993) (holding that plaintiff did not unreasonably protract proceedings by rejecting a proposed IEP that was later used as the basis for final relief; "merely pursuing the proceedings to a final decision did not unreasonably protract the[] proceedings"); *Johnson v. Bismarck Pub. Sch. Dist.*, 949 F.2d 1000, 1004 (8th Cir. 1991) (affirming unreasonable protraction finding in case where plaintiff's attorney failed to attend meetings with school district officials and filed suit without making

No. 11-40518

I have two other concerns with the district court's handling of this issue: the placement of the burden of proof and the complete denial—rather than reduction—of pre-offer fees. First, although § 1415(i) does not expressly state a burden of proof, "'[p]erhaps the broadest and most accepted idea is that the person who seeks court action should justify the request . . . .'" *Schaffer*, 546 U.S. at 56 (citation omitted). Accordingly, the party with the burden of proof under subparagraph (F) should be the party claiming that an attorneys' fees award should be reduced because of another party's engaging in "unreasonable protraction." Here, that is the District.

Although we have not specifically addressed the burden of proof in this context, the analysis above dovetails with the extant law in this area. Courts calculate attorneys' fees awards under the IDEA using the "lodestar" method. *See, e.g.*, *Gary G. v. El Paso Indep. Sch. Dist.*, 632 F.3d 201, 205 (5th Cir. 2011); *Damian J. v. Sch. Dist. of Phila.*, 358 F. App'x 333, 335-37 (3d Cir. 2009) (unpublished). The lodestar amount is presumptively reasonable, but may be further adjusted using this circuit's twelve well-known *Johnson* factors. *See, e.g.*, *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 800 & n.18 (5th Cir. 2006) (citing *Johnson v. Ga. Hwy. Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)); *see also Holmes v. Millcreek Twp. Sch. Dist.*, 205 F.3d 583, 595-96 (3d Cir. 2000) (applying some *Johnson* factors to reduce attorneys' fee award in IDEA case, without citing *Johnson*). Under the lodestar approach, the burden of proving that the properly calculated lodestar amount should be reduced falls to the party opposing the fee award. *See, e.g.*, *Robinson v. City of Harvey*, 489 F.3d 864, 872 (7th Cir. 2007) (citation omitted). Since the effect of the District's argument is to reduce—indeed, eliminate—the attorneys' fees here, it has the burden to prove "unreasonable protraction."

___

any "attempt[s] at informal negotiation" or "even telling District officials what relief he thought [the plaintiff] deserved").

35

No. 11-40518

The district court implicitly concluded that no evidence was presented on unreasonable protraction and, indeed, found that no one had raised this issue at all. *S.H.*, 2011 U.S. Dist. LEXIS 32260, at *10-11.[9] Where there is a vacuum of evidence and argument on a specific issue, the party with the burden to prove the issue at trial loses. *See, e.g.*, *Mo. Pac. R.R. Co. v. Harbison-Fischer Mfg. Co.*, 26 F.3d 531, 536 (5th Cir. 1994); *see also Celotex Corp. v. Catrett*, 477 U.S. 322-24 (1986). Accordingly, rather than ruling against S.H., the district court either should not have addressed subparagraph (F) or should have concluded that the District failed to offer evidence sufficient to prove unreasonable protraction. The absence of evidence and argument below meant that the District should have lost on this point, not won.

This leads me to the final point with which I part ways with the majority opinion—the complete denial of fees. Where it applies, subparagraph (F) operates to *reduce* fees "accordingly." 20 U.S.C. § 1415(i)(3)(F). Neither the district court nor the majority opinion explains why the prevailing-party parents here deserve a fee award of zero. Given the allocation of the burden of proof and the IDEA's text, I disagree with barring the recovery of any fees—even had S.H.

---

[9] The majority opinion cites to a statement in the District's response to the motion for attorney's fees that mentions "protraction" and stated that any award would be "completely unreasonable." However, the district court concluded that neither party raised the issue of unreasonable protraction. That is probably because the District's passing reference to "protraction" was in the context of arguing that S.H. was not a "prevailing party," a point on which the District lost. The District never argued that S.H. *unreasonably* protracted and did not cite to subparagraph (F)(i). Instead, in a separate section from which the "completely unreasonable" quote comes, it cited to subparagraph (F)(*iii*), a separate provision dealing with "excessive" time spent "considering the nature of the action" (to which S.H. did respond) which would not have alerted S.H. or the court to a claim of unreasonable protraction under (F)(i).

That lack of discussion and citation is in stark contrast to the District's lengthy discussion of the effect of a settlement offer on post-offer fees and citation to the correct provision. The district court rightly could expect the plaintiff to provide any "substantial justification" in response to this attack on post-offer fees. However, as to pre-offer fees and unreasonable protraction, the district court correctly concluded that "the parties did not address this issue." For exactly that reason (among others), the district court improperly reached the question of "unreasonable protraction."

No. 11-40518

unreasonably protracted these proceedings—without analyzing whether that result is the appropriate reduction.[10]

However inadvertently, the attorneys' fee ruling here only further steepens an already-uphill climb parents face in this area by turning every settlement offer into a game of high-stakes poker between school districts and the parents of special-needs children.[11]  *See* Thomason*, supra*, at 484-85 (discussing the rarity of IDEA due process hearings and the minute amount of special education funds (0.3%) actually spent on IDEA disputes).[12]  In addition to cash, experts, and perseverance, parents with legitimate arguments for more benefits for their special-needs child apparently must also arm themselves with a crystal ball accurate within mere percentage points of what a "final" adjudicator might actually award.[13]  If they are wrong, either the lawyer does not get paid or the parents get saddled with a bill they likely cannot

[10] Neither party briefed the portion of subparagraph (F)'s exception that provides that the fee-reduction provision "shall not apply" if "there was a violation of [§ 1415]."  20 U.S.C. § 1415(i)(3)(G).  This exception seems to apply given our conclusion that the District violated § 1415.  I agree, however, with the majority opinion's implicit conclusion that this argument is forfeited.  S.H. briefly argued for a different (and here inapplicable) exception under subparagraph (G) that applies if a school district unreasonably protracts proceedings.

[11] School districts, of course, come to the table with public funds and "in-house" experts. *See, e.g.*, *Murphy*, 548 U.S. at 314 (Breyer, J., dissenting) ("The costs of experts may not make much of a dent in a school district's budget, as many of the experts they use in IDEA proceedings are already on the staff." (citing *Oberti v. Bd. of Educ.*, 995 F.2d 1204, 1219 (3d Cir. 1993))).  They may also recover attorneys' fees from parents and their attorneys in certain situations.  *See* 20 U.S.C. § 1415(i)(3)(B)(i)(II)-(III).

[12] *See also* Samuel R. Bagenstos, *The Judiciary's Now-Limited Role in Special Education*, *in* Schoolhouse at 129 (noting that three of the largest school districts in the nation, including San Antonio ISD, "were not required to pay *any* plaintiffs' attorneys' fees in IDEA cases during [the 1999-2001 school years]").

[13] The difference between the settlement offer amount and the amount ultimately awarded is only $875, which equates to 13.5 hours of private instruction at the Wayman Learning Center.  In other words, S.H. eventually obtained almost 95% of what the settlement offer would have provided.  Had he received a dollar more than the settlement offer, the fee-bar at §1415(i)(3)(D) would not even be in play.

afford—providing disincentives for lawyers to take these types of cases and for parents to exercise their IDEA-given right to disagree with the school district's provision of services in the future.[14] *Cf. Angela L. v. Pasadena Indep. Sch. Dist.*, 918 F.2d 1188, 1192 (5th Cir. 1990) (observing that the failure of the IDEA's predecessor to provide for attorneys' fees awards made it "difficult" for the "[p]arents of handicapped children, often already burdened by the prohibitive costs of medical care and equipment," to "pursue expensive litigation against school districts"); Daggett, *supra*, at 24 (noting disparate rates of success achieved by parents who obtained counsel and those who did not).

The IDEA itself does not require this outcome—quite the opposite. *Cf. Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 533 (2007) ("[W]e find nothing in the [IDEA] to indicate that when Congress required States to provide adequate instruction to a child 'at no cost to parents,' it intended that only some parents would be able to enforce that mandate."). "The statute instead takes pains to 'ensure that the rights of children with disabilities and parents of such children are protected.'" *Id.* (quoting 20 U.S.C. § 1400(d)(1)(B)). The result here, however, frustrates that goal. Accordingly, I would vacate the portion of the district court's order denying pre-offer fees and remand for an award of those fees under the lodestar method. From the majority opinion's failure to do so, I respectfully dissent.

---

[14] This outcome falls perhaps most heavily on those parents who are not wealthy enough to pay for their child's special education needs themselves but also not financially poor enough to qualify for pro bono legal services. *See* Thomason*, supra*, at 484.